**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, et als

VS. C. A. NO. 04-304S

CITY OF PROVIDENCE, et als

consolidated with

JOHN C. CHMURA, et als

VS. C. A. NO. 04-553S

CITY OF PROVIDENCE, by and
through STEVEN T. NAPOLITANO,
its Treasurer, et als

**MOTION FOR SUMMARY JUDGMENT OF DEFENDANT,
MANUEL VIEIRA**

Defendant, Manuel Vieira, hereby moves for Summary Judgment pursuant to Fed. R. Civ. P. 56. In support of his Motion for Summary Judgment, Defendant, Manuel Vieira, relies upon the accompanying Memorandum of Law.

Defendant, Manuel Vieira
By His Attorney,

George L. Santopietro, Esq.--#2056
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
751-5522

## CERTIFICATION

I hereby certify that I mailed a true copy of the within Motion for Summary Judgment and Memorandum of Defendant, Manuel Vieira, by regular mail, postage prepaid on this 6 day of April, 2006 to:

Mark Fay, Esq.
127 Dorrance Street, 2nd floor
Providence, RI 02903

Carolyn Mannis, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

Kevin McHugh, Esq.
Michael Calise, Esq.
Assistant City Solicitor
City of Providence
275 Westminster Street, 2nd floor
Providence, RI 02903

Susan Marcotte Carlin, Esq.
The Lincoln Center, Suite 205
132 Old River Road
Lincoln, RI 02865

Dean Robinson, Esq.
670 Willett Avenue
East Providence, RI 02915

George J. West, Esq.
One Turks Head Place, Suite 312
Providence, RI 02903

Annette C. Scalzi
Annette C. Scalzi

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, et als

VS. C. A. NO. 04-304S

CITY OF PROVIDENCE, et als

consolidated with

JOHN C. CHMURA, et als

VS. C. A. NO. 04-553S

CITY OF PROVIDENCE, by and through STEVEN T. NAPOLITANO, its Treasurer, et als

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, MANUEL VIEIRA**

Defendant, Manuel Vieira

By His Attorney,
George L. Santopietro, Esq.-#2056
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
(401) 751-5522

# TABLE OF CONTENTS


Table of Authorities .................................................. i

Issues Presented .................................................. 1

Statement of Facts .................................................. 2

Argument .................................................. 6

I. DEFENDANT, MANUEL VIEIRA, DID NOT DEPRIVE PLAINTIFFS OF THEIR CIVIL RIGHTS OR CONDUCT AN ILLEGAL SEIZURE .................. 7

(a) qualified and supervisory immunity ............ 12

II. DEFENDANT, MANUEL VIEIRA, DID NOT ENGAGE IN THE INTERCEPTION OF WIRE, ELECTRONIC AND ORAL COMMUNICATIONS IN VIOLATION OF 18 U.S.C. §2511............................ 19

(a) the interception occurred within the ordinary course of business ..................... 21

(b) the plaintiffs consented to the interception ... 25

III. DEFENDANT, MANUEL VIEIRA, DID NOT ENGAGE IN THE UNAUTHORIZED INTERCEPTION, DISCLOSURE, OR USE OF WIRE, ELECTRONIC, OR ORAL COMMUNICATIONS IN VIOLATION OF R.I. GEN. LAWS §11-35-21 .............................................. 27

IV. DEFENDANT, MANUEL VIEIRA, DID NOT VIOLATE PLAINTIFFS' RIGHT TO PRIVACY .............. 28

V. DEFENDANT, MANUEL VIEIRA, DID NOT ENGAGE IN THE INTERCEPTION AND DISCLOSURE OF WIRE, ORAL, OR ELECTRONIC COMMUNICATIONS IN VIOLATION OF R.I. GEN. LAWS §12-5.1-1 et seq. ............................................ 31

Conclusion .................................................. 33

# TABLE OF AUTHORITIES

## 1. United States Supreme Court Decisions

*Anderson v. Creighton*,
483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)……………10, 11

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 206 (1986)…………………1

*Brandon v. Holt*,
469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)…………………..2

*Brosseau v. Haugen*,
125 S. Ct. 596, 543 S.Ct. 194, 160 L.Ed.2d 583 (2004)………………..8

*Canton v. Harris*,
489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)………………..6

*County Comm'rs of Bryan County v. Brown*,
520 U.S. 397, 117 S.Ct. 3034, 137 L.Ed.2d (1997)………………..13,14

*First National Bank of Arizona v. Cities Service Co.*,
391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)…………………1

*Malley v. Briggs*,
475, U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)……………….13

*Mitchell v. Forsyth*,
472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)…………….... 7,10

*Monell v. Department of Social Servs.*,
436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)…………..………3

*O'Connor v. Ortega*,
480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 601 (1987)………………..24

*Saucier v. Katz*,
533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)…………...7,8,12

*Wilder v. VA Hospital Ass'n,*
496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990)....................4

*Will v. Michigan Dept. of State Police,*
491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).......................2

2. Federal Court Decisions

*Amati v. City of Woodstock,*
176 F.3d 952 (7th Cir. 1999), cert. denied, 528 U.S. 985,
120 S.Ct.445, L.Ed.2d 362 (1999).........................................17

*Anderson v. City of Columbus,*
374 F. Supp. 2d 1240 (2005) ........................................4,22

*Arias v. Mutual Cent. Alarm Serv.,*
202 F.3d 553 (2nd Cir 2000)....................................15-17,21

*Barreto-Rivera v. Medina-Vargas,*
168 F.3d 42 (1st Cir. 1999)..............................................13

*Blake v. Wright,*
179 F. 3d 1003 (6th Cir 1999).......................................14,24

*Camilo-Robles v. Hoyos,*
151 F.3d 1 (1st Cir. 1998), cert. denied,
525 U.S. 1105 (1999).............................................7-11,13

*Doe v. Taylor Indep. Sch. Dist.,*
15 F. 3d 443 (5th Cir. 1994)...............................................9

*Greenfield v. Kootenai County,*
752 F.2d 1387 (9th Cir. 1985).............................................15

*Jandak v. Village of Brookfield,*
520 F. Supp. 815 (D.C. Ill. 1981)..................................15,19,20

*Kabir v. F.W. Green,*
2003 WL 2405700 (2003)...................................................3

*Napier v. Windham*,
187 F.3d 177 (1st Cir. 1999)........................................1,11

*Savard v. Rhode Island*,
338 F.3d 23 (1st Cir. 2003)....................................7,8,10,12

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003)........................................4

*Shaw v. Stroud*,
13 F.3d 791 (4th Cir. 1994), cert. denied,
513 U.S. 813 and 513 U.S. 814 (1994).............................9,14

*United States v. Anderson*,
154 F.3d 1225 (10th Cir. 1998)........................................25

*United States v. Angevine*,
281 F.3d 1130 (10th Cir. 2002)........................................25

*United States v. Lanoue*,
71 F.3d 966 (1st Cir. 1995)............................................21

*United States v. Leary*,
846 F.2d 592 (10th Cir. 1988).........................................25

*United States v. Workman*,
80 F.3d 688 (2d Cir. 1996)............................................21

*Vinnedge v. Gibbs*,
550 F.2d 926 (4th Cir. 1977)...........................................3

*Walker v. Darby*,
911 F.2d 1573 (11th Cir. 1990)........................................22

*Young v. City of Providence*,
396 F. Supp. 2nd 125 (2005).......................................1,7-13

3. State Court Decisions

*Clancy v. McCabe.*,
441 Mass. 311 (2004)........................................................6

4. Federal Statutes

42 U.S.C. §1983 ..............................................................2-4,11,14

18U.S.C.§2510..........................................................15,16,18,20,21

18U.S.C.§2511.............................................................14-16,18,20

5. Federal Civil Procedure

Fed. R. Civ. P. 56 ..............................................................1

6. Rhode Island Statutes

R.I. Gen. Laws §11-35-21.......................................................22

R.I. Gen. Laws § 9-1-28.1.......................................................23

R.I. Gen. Laws §12-5.1-1 ....................................................26,27

7. State Constitution

Article I, Section 6 of the Rhode Island Constitution.................................2,3

8. Secondary Authorities

Senate Rep. No. 1097, 90th Cong. 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. Admin. News.....21

## ISSUES PRESENTED

I. Whether defendant, Manuel Vieira, violated 42 U.S.C. §1983 or Article I, Section 6 of the R.I. Constitution as alleged in Counts I and II of plaintiffs' Complaint.

II. Whether defendant, Manuel Vieira, violated 19 U.S.C. §2511 as alleged in Count III of plaintiffs' complaint?

III. Whether defendant, Manuel Vieira, violated R.I. Gen. Laws §11-35-21 as alleged in Count IV of the plaintiffs' complaint?

IV. Whether defendant, Manuel Vieira, deprived plaintiffs of their right to privacy in violation of R.I. Gen. Laws §9-1-28.1 as alleged in Count V of their complaint.

V. Whether defendant, Manuel Vieira, violated R.I. Gen. Laws §12-5.1-1 et seq. as alleged in Count VI of the plaintiffs' complaint.

# STATEMENT OF UNDISPUTED FACTS

1. Manuel Vieira became Director of Communications for the City of Providence in 1993 and held that position until he left employment in February 2003. (Vieira Depo. 26/17-25; 27/1-2)

2. Meetings were held to establish the needs for the new Public Safety Complex. (Vieira Depo. 34/1-3.)

3. Communications Department employees and representatives from the fire and police departments and internal affairs were present to discuss the Public Safety Complex in December, 2001. (Vieira Depo. 35/11-25; 36/1-11 and 37/16-20.)

4. Total Recall was put out to bid through a request for proposal. (Vieira Depo. 30/12-17)

5. The request for a proposal for the computer system was drafted and presented to the Board of Contracts and Supplies. (Vieira Depo. 39/6-12)

6. From the time that the city received bids until the bid for the system was accepted, it took about 5-6 months. (Vieira Depo. 54/16-22.)

7. Expanets or Avaya was awarded the contract for the Total Recall system. (Vieira Depo. 44/21-23.)

8. The Board of Contracts and Supplies and, not Manuel Vieira, awarded the contract. (Vieria Depo. 44/24-25; 45/1-5.)

9. Manuel Vieira first became aware of the name Total Recall system after the bid was recommended and accepted. (Vieira Depo. 46/10-14.)

10. Total Recall had two functions-record lines at central station at the Public Safety Complex, where clerks received service calls, and for a record management system to account for phones in the Public

Safety Complex and Communications department. (Vieira Depo.47/13-25)

11. Phone lines in the police control center were being recorded. (Lennon Depo. 78/13-15)

12. The purposes of Total Recall were to record emergency lines and for a records management system which would identify phone abuse. (Vieira Depo. 30/12-15.)

13. The record management system was to identify "900" or sex number calls and other phone abuses. (Vieira Depo. 48/1-6)

14. The office of communications was located at the West Exchange Street address. (Vieira Depo. 58/17-25)

15. The Public Safety Complex opened at the end of July/beginning of August, 2002. (Vieira Depo. 58/10-12)

16. In July/August 2002, Total Recall system was operational. (Vieira Depo. 59/1-7)

17. Manuel Vieira was never given a password to access the Total Recall system. (Vieira Depo. 90/16-17)

18. Manuel Vieira did not know how to access a recorded phone conversation that was stored in Total Recall. (Vieira Depo. 90/6-9)

19. Manuel Vieira never saw the Total Recall system. (Vieira Depo. 138/14-17)

20. Manuel Vieira told one of his technicians Tony Desmaris that he wanted every line to be accounted for record management. (Vieira Depo. 104/5-8)

21. In early to mid January, 2003, Manuel Vieira realized, after a conversation with Fire Chief Dutra, that a line other than the central station or emergency lines may have been recorded. (Vieira Depo. 63/24-25; 64/1-13)

22. After a conversation with Chief Dutra, Manuel Vieira contacted City Solicitor John D'Amico and requested a meeting with representatives from the fire, police and communications department. (Vieira Depo. 74/13-19) and (75/14-17)

23. The meeting was scheduled, but cancelled. (Vieira Depo.75/24-25)

24. Manuel Vieira never spoke to Tony Desmaris about recording the lines except for central station and the management system. (Vieira Depo. 63/14-23)

25. Tony Desmaris did not indicate to Manuel Vieira that other lines were being recorded. (Vieira Depo. 66/14-17)

26. Manuel Vieira did not realize that more lines were being recorded until February 2003. (Vieira Depo. 66/18-25)

27. Manuel Vieira refused to resign because he believed he didn't do anything wrong. (Vieira Depo. 68/14-16)

28. Stephen Moise was the fire alarm inspector. (Moise Depo. 26/9) and he was trained on the system with other colleagues. (Moise Depo.31/2-7)

29. Joseph Richardson was the Deputy Director of Communications. (Richardson Depo. 11/18-20)

30. He attended meetings during which the communications system for Public Safety Complex was discussed. (Richardson Depo. 22/10-13)

31. He understood that all emergency calls for service, channel 4 (police calls), and NCIC calls were being recorded. (Richardson Depo. 27/1-8 see page 32)

32. Based upon his conversations with Manuel Vieira, he did not have an understanding that Manuel Vieiria knew the lines for Fire Chiefs Lanzi and Rattigan were being recorded. (Richardson Depo. 42/1-6)

33. Manuel Vieira never told him that all the calls were being recorded. (Richardson Depo. 49/9-12)

34. Mary Lennon was the Chief of Operations in the Communications Department. (Lennon 13/8-10)

35. She received some training in the Total Recall system in November 2002. (Lennon Depo. 41/9-11)

36. She had no first hand knowledge as to who made the decision to install the Total Recall system. (Lennon Depo. 79/4-6)

37. She was instructed by Deputy Director Joseph Richardson that a form had to be used in order to access Total Recall recorded conversations. (Lennon Depo. 46/12-21)

38. She believes that there were two requests from the police department to access recorded phone conversations. (Lennon Depo.53/1-4)

39. One would have to use a terminal in the computer room and a password in order to retrieve phone recordings on the Total Recall system. (Lennon Depo. 54/21-24)

## ARGUMENT

In deciding a Motion for Summary Judgment, a court must consider whether the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a genuine issue of material facts rests with the moving party. Young v. City of Providence, 396 F. Supp. 2nd 125,130-131 (2005). Once the moving party has pointed to the absence of adequate evidence supporting the non-moving party's case, the onus is on the non-moving party to present facts that show a genuine issue for trial. Napier v. Windham, 187 F.3s 177,182 (1st Cir. 1999) "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed.2d 206 (1986) (citing Fed.R.Civ.P. 56 (e)). "Plaintiff… [must] offer [ ] …' significant probative evidence tending to support the complaint." *Id.* at 256, 106 S. Ct. 2505 (quoting from First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L.Ed. 2d 569 (1968).

## I. Defendant, Manuel Vieira, did not deprive the Plaintiffs of their civil rights or conduct an illegal seizure.

The central issues in the instant case are embodied in Counts I and II of the plaintiffs' complaint. In essence, plaintiffs allege that defendants, including Manuel Vieira, (hereinafter referred to as "Vieira") violated their rights under 42 U.S.C.§1983 or Article I, Section 6 of the Rhode Island Constitution by using, installing and maintaining the "Total Recall" system. Additionally, the plaintiffs have filed this action against the defendants individually and in their official capacities. For the purposes of this analysis, both counts will be addressed at this time.

In the present case, there is absolutely no evidence whatsoever that Vieira acted outside of the scope of his position as Director of Communications for the City of Providence at the time the alleged violations occurred. It is clear that a suit against an official in his official capacity is not an action against the official, but rather is a suit against the official's office. Will v. Michigan Dept. of State Police, 491 U.S.58, 71, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989) citing Brandon v. Holt, 469 U.S. 464, 471, 105 S. Ct. 873, 83 L.Ed.2d 878 (1985). As such, an official acting in his official capacity is not a "person" under §1983. *Id.* at 71. Moreover, in order for the plaintiffs to pursue the case at bar against Vieira in his individual capacity, they must

affirmatively show that defendant "acted personally in the deprivation of the plaintiffs' rights." Kabir v. F. W. Green, 2003 WL 24054700, p. 7(E.D. Va. 2003) citing Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). It is not enough to show that subordinates of a sued official deprived plaintiffs of their constitutional rights; the doctrine of *respondeat superior* has no application in Section 1983 cases. *Id.* at 7. See, Monell v. Department of Social Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978). If plaintiffs have not shown a personal connection between this defendant and a denial of their constitutional rights, that claim must fail. Similarly, that reasoning should apply to plaintiffs' contentions in Count II of their complaint. Accordingly, since the City of Providence is a named defendant, Vieira's inclusion individually is inappropriate and unjustified.

As to his official capacity, Vieira is likewise not liable because plaintiffs have not alleged or shown that a municipal policy or custom existed that caused the violation. In the instant case, plaintiffs have not set forth a cognizable claim under §1983 or Article I Section 6 because they are seeking damages under Title III as reflected in Count III of their complaint. When plaintiffs attempt to enforce an existing federal right under §1983, "courts must look to whether Congress intended to foreclose [ ] a remedy under §1983 either 'expressly, by forbidding recourse to §1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is

incompatible with individual enforcement under §1983." Schwier v. Cox, 340 F.3d 1284, 1292 (11th Cir. 2003). A civil enforcement mechanism for a Title III violation is already in place, and it allows for damages, just as a §1983 action would. There is no reason for plaintiffs to look to §1983 as "an alternative source of express congressional authorization of private suits." Wilder v. VA Hospital Ass'n, 496 U. S. 498, 509 n. 9, 110 S. Ct. 2510, 110 L.Ed. 2d 455 (1990). In effect, plaintiffs would be recovering, if at all, for the exact same claim/violation under two different statutes. see, Anderson v. City of Columbus, 374 F. Supp, 2d 1240, 1253 (2005). Here, plaintiffs have filed claims seeking relief pursuant to Title III which will be discussed hereafter.

A review of the plaintiffs' complaint reveals that it is replete with naked allegations which are unsupported by any evidence. So far, plaintiffs have deposed fire alarm inspector Stephen Moise and defendants Joseph Richardson, Urbano Prignano, Mary Lennon and Vieira. Not one witness has testified that they ever saw Vieira use or access the Total Recall system or that he knew the phone lines for inbound and outgoing calls, except for emergency or central desk lines, were being recorded. As such, there is no testimonial evidence supporting any of the contentions in plaintiffs' complaint. In his deposition, Vieira explained that the only lines which were recorded related to emergency or central desk calls. Also, at the request of high-ranking officials from the Police Department, he incorporated call cost accounting within the

telephone system which maintained records of every call into and out of the Public Safety Complex. The purpose of this record management system was to identify any misuse of the telephone system since it was common knowledge that long distance and "900" or sex line calls were generated from the former police station in Providence. However, Vieira adamantly denied that he ordered or knew that phone lines at the Public Safety Complex were recording private conversations. When he was initially informed in mid to late January, 2003 that a call involving Fire Chief Dutra may have been recorded, he was shocked. In response, he immediately questioned one of his technicians and contacted the City Solicitor's office for advice. Such conduct clearly indicates that he had no knowledge with respect to the extent of the recording of calls. That is not to say, of course, that even if he knew conversations were recorded, that his conduct is "clearly established" as unlawful.

Assuming plaintiffs establish a genuine issue of material fact that Vieira violated plaintiffs' constitutional and/or statutory rights, an assertion totally denied by Vieira, plaintiffs have failed to show that his action or omission was affirmatively linked to plaintiffs' damages. "[M]ere cause-in fact does not suffice to establish the required affirmative link. If that were the test, every degradation of this sort would give rise to [supervisory] liability, for every §1983 claimant harmed by such employer conduct could 'point to something the [supervisor] "could have done" to prevent the unfortunate incident."

Clancy v. McCabe, 441 Mass. 311, 321 (2004) (quoting Canton v.. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). Rather, the affirmative connection requires something more, such as "tacit approval of, acquiescence in, or purposeful disregard of, rights-violating conduct," Camilo-Robles v. Hoyos, 151 F. 3d 1, 7 (1st Cir. 1998), cert. denied, 525 U.S. 1105 (1999). Here, the complaint is replete with obtuse and unsupported allegations and the record, which consists of the depositions and plaintiffs' answers to interrogatories, is bereft of any evidence linking Vieira to any alleged injuries.

As to the issue of damages, in their complaint plaintiffs contend that they suffered personal injuries and other damages as a result of the defendants' conduct. However, in response to defendants' interrogatories numbered 21 and 22, they waived their claims for personal injuries. Also, their responses, which have not been supplemented, fail to enumerate or describe their "other damages."

> 21. Please describe in detail the nature of each component and/or symptom of personal injury you experienced as a result of defendants' actions and as alleged in the complaint. For each such component and/or symptom of personal injury, please identify by name, address and specialty each and every health care provider you consulted, treated with, otherwise visited as a result of the personal injury, and provide the dates of each such consultation or visit.
>
> Answer: I am waiving any personal injury claim as a result of this action but I am seeking nominal damages.
>
> 22. With regard to each component and/or symptom of personal injury described in your answer to interrogatory 21 above, please state

whether you had ever experienced any similar component and/or symptom of personal injury prior to your discovery of the matters described in your complaint related to the "Total Recall" system, and if your answer is in the affirmative, identify each previously experienced component and/or symptom of personal injury, its cause and origin, and provide the name, address and dates of treatment of each and every health care provider with whom you consulted, treated or visited as a result of said prior similar component and/or symptom of personal injury.

Answer: I am waiving any personal injury claim as a result of this action but am seeking nominal damages.

If this Court finds that the plaintiffs have demonstrated that they are entitled to relief in accordance with Counts I and/or II of their complaint, Vieira is exempt from liability based upon qualified and/or supervisory immunity.

(a) Qualified and Supervisory Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Courts considering qualified immunity claims follow a three pronged approach and must analyze the issues in a particular order. Young v. City of Providence, 396 F.3d 125, 131 (2005) citing Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003); Saucier, 533 U. S. at 200. First, the court inquires whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a

constitutional right?" *Id.* at 131. If the answer is affirmative, the court must then determine if the right allegedly violated was "clearly established" at the time. *Id.* at 131. (citing Brosseau v. Haugen, 125 S. Ct. 596, 599, 543 U.S.194, 160 L.Ed.2d 583 (2004). If the right was clearly established, then the court reaches the final query: "whether a reasonable official, situated similarly to the defendant(s), would have understood that the conduct at issue contravened the clearly established law." *Id.* at 131. citing Savard, 338 F.3d at 27. Even if an official is mistaken regarding whether his conduct violated clearly established law, qualified immunity protects the official when his "mistake as to what the law requires is reasonable." *Id.* at 132. citing Saucier, 533 U. S. at 205.

Qualified immunity protects "supervisory officials from suit when they could not reasonably anticipate liability." *Id.* at 132. citing Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998). In the present case, plaintiffs seek to hold Vieira accountable for his role as Director of the Communications Department. When defendants seek qualified immunity in the supervisory liability context, two prongs of the traditional three-pronged inquiry become more particularized. *Id.* at 132. First, within the "clearly established" prong, the court must answer two distinct questions. In order "for a supervisor to be liable there must be a bifurcated 'clearly established' inquiry – one branch probing the underlying violation, and the other probing the supervisor's potential liability." *Id.* at 132. (citing Camilo-Robles, 151 F.3d at 6.) More

specifically, "the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Id.* at 132. (citing Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 456 (5th Cir. 1994); Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir. 1994) ).

The second change to the traditional qualified immunity inquiry occurs in the third prong, "objective legal reasonableness." *Id.* at 132. When the underlying claim involves supervisory liability, a court must ask whether the supervisor "should reasonably have understood that his conduct jeopardized [the plaintiff's clearly established constitutional] rights. *Id.* at 132. (citing Camilo-Robles, 151 F.3d at 7). Although courts generally keep the qualified immunity analysis distinct from the merits analysis, the supervisory liability "test of objective legal reasonableness to some extent collapses the separate 'qualified immunity' and 'merits' inquiries into a single analytic unit." *Id.* at 132.

In order to satisfy the first prong of the qualified immunity analysis, plaintiffs must demonstrate that "the facts alleged show Vieira's conduct violated a constitutional right[.]" see, *Id.* at 133. In this case, plaintiffs have not established that Vieira either personally or in his official capacity violated their rights.

The second prong of the qualified immunity analysis "deals with fair warning; it asks whether the law was clearly established at the time of the constitutional violation. *Id* . at 133. (citing Savard, 338 F.3d at 127). In the supervisory liability context, this prong divides into two distinct queries. This Court must determine "whether both the underlying constitutional violation of the plaintiffs' rights and the basis for liability of Vieira were clearly established [ ]". *Id.*, at 134. (citing Young, 404 F.3d at 32) (emphasis added). First, this Court must discern if the constitutional right in prong one is a clearly established constitutional right. see Camilo-Robles, 151 F.3d at 6. Only if that question is answered in the affirmative does the Court proceed to the second inquiry regarding whether it was clearly established that a supervisor could be liable for the recording of private conversations. *Id.* at 134. The Supreme Court's holding in Anderson v. Creighton, 483 U. S. 635, 640, 107 S. Ct. 3034, 97 L.Ed.2d 523(1987), suggests the need for a particularized statement of the right violated:

> It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell v. Forsyth, 472 U. S. 511, 535, n.12 (1985); but it is to say that in the light of pre-existing

law the unlawfulness must be apparent.

Anderson attempted to preclude the use of overly generalized allegations to satisfy the clearly established prong and thereby defeat the defense of qualified immunity. *Id.* at 134. Some cases since Anderson have required plaintiffs to show that a more particularized right was in fact clearly established law. *Id.* at 134. See, e.g., Napier v. Town of Windham, 187 F.3d 177, 188-189 (1st Cir. 1999.

In the instant case, the plaintiffs have filed a complaint which consists solely of unsubstantiated allegations. Although in Count I they seek relief pursuant to 42 USC §1983, they do not adequately state the basis of their claim. Additionally, they fail to specifically identify the actual violation purportedly committed by Vieira and the resulting consequences. In this case, the law is not "clearly established" that callers were entitled to a reasonable expectation of privacy. The law regarding the monitoring of phone lines was sufficiently unclear at the time of the alleged violations that a "reasonable" person in Vieira's position would not have known he was violating "clearly established" rights.

The second inquiry within the "clearly established" prong asks whether "it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in [this] context." *Id.* at 134. (citing Camilo-Robles, 151 F.3d at 6). "[T]he relevant legal rights and obligations

must be particularized enough that a reasonable official can be expected to extrapolate from them and conclude that a certain course of conduct will violate the law." *Id.* at 135. (citing Savard, 338 F.3d at 28). The right violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. Saucer v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L.Ed. 272 (2001).

Without engaging in repetition, in every deposition which has been taken by the plaintiffs, no one has testified that Vieira knew or should have known that telephone conversations at the Public Safety Complex were being recorded. Moreover, each defendant affirmed that they had no personal knowledge that lines were recorded. Furthermore, plaintiffs have not established that the Total Recall system was programmed by Vieira or his subordinates to record conversations. Is there liability on the part of any defendant if the system was pre-programmed to record conversations by the entity which sold the system to the City without the knowledge of the defendants? Vieira did not receive any training on the system and did not have an access code. The undisputed evidence manifests that he never knew that lines other than emergency and central station were recorded. Once he was notified that a non-emergency or central desk line may have been subjected to recording, he contacted Attorney John D'Amico of the City Solicitor's office

and sought his advice. He only ordered the lines to be subjected to call costs accounting and not recording.

Plaintiffs' final obstacle in overcoming Vieira's claim of qualified immunity requires them to establish at least a material issue of disputed fact as to whether Vieira acted in an objectively unreasonable manner. *Id.* at 136. In order for conduct to be unprotected by qualified immunity, it must rise to the level of deliberate indifference. *Id.* at 136. (citing Camilo-Robles, 151 F.3d at 7). Proof of deliberate indifference requires that plaintiffs show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." *Id.* at 136. But, supervisors remain protected by qualified immunity when they make reasonable mistakes regarding the constitutionality of their conduct. *Id.* at 136-137 (citing Saucier, 533 U. S. at 206). Therefore, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law." *Id* .at 137. (citing Malley v. Briggs, 475 U. S. 335, 341 (1986)). Thus, plaintiffs must prove that there are material factual disputes regarding whether Vieira was deliberately indifferent to a grave risk. That "conduct or inaction must amount to a reckless or callous indifference to the constitutional rights of others." Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1s Cir. 1999) Deliberate indifference is a stringent standard of fault, requiring proof that a [supervisor] disregarded a known or obvious consequence of his action." County Comm'rs

of Bryan County v. Brown, 520 U.S. 397, 410, 177 S.Ct. 1382, 137 L.Ed.626 (1997). Of course, mere negligence is insufficient and does not rise to the level of callous indifference. Although Vieira may have done more, such a rule is not the standard by which his conduct should be judged. see, Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir.1994), cert. denied, 513 U.S. 813 and 513 U.S. 814 (1994). Here, Vieira did not exhibit the "deliberate indifference' to the alleged conditional injuries required to impose liability under §1983.

Although the foregoing analysis deals with the application of qualified and supervisory immunity in actions under §1983, those defenses are equally applicable to the plaintiffs' Title III claims which are addressed later in this memorandum. see, Blake v. Wright, 179 F.3d 1003, 1110-1111 (6th Cir. 1999)

## II. Defendant, Manuel Vieira, did not engage in the interception and disclosure of wire, oral or electronic communications.

In Count III of their complaint, plaintiffs contend that Vieira violated Section 2511 of the Omnibus Crime Control and Safe Streets Act of 1968, which prohibits, in relevant part, any person from intentionally intercepting a wire, oral or electronic communication. In the instant case, the record, which presently consists of four depositions and plaintiffs' answers to interrogatories, is completely devoid of any evidence which establishes that Vieira acted

willfully or intentionally. Hence, summary judgment should be entered on his behalf relative to this count of the complaint.

If this Court disagrees, it is necessary to ascertain if Vieira has violated 18 U.S.C. §2511. With that in mind, 18 U.S. §2510 must be examined in order to define the apposite terms. An interesting question involves Section 2510 (5)(a)(ii) of the statute which has caused considerable controversy and confusion in the courts, and has yet to be considered in circumstances similar to those presented here. See, Jandak v. Village of Brookfield, 520 F.Supp. 815, (D.C.Ill. 1981). As previously noted, the statute inhibits, among other things, intentionally intercepting a wire or oral communication. However, the case law relative to Title III is somewhat unclear regarding the proper definition of an "interception" under the statute. Arias v. Mutual Cent. Alarm Serv. 202 F.3d 553, 557 (2nd Cir. 2000). Subsection 4 of Section 2510 defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 U.S.C. §2510(4). The Arias court cited with approval the Ninth Circuit's holding in Greenfield v. Kootenai County, 752 F.2d 1387 (9th Cit. 1985). In Greenfield, the court found that telephone calls which were automatically recorded but not listened to were not "aurally acquired" within the meaning of Title III. see, Greenfield, 752 F.2d at 1389. As the district court correctly noted, although the definition of "intercept" was subsequently amended to

encompass "aural or other acquisition," 18 U.S.C. §2510(4) (emphasis added), this amendment sheds no light on the definition of "intercept" with respect to the oral communication at issue here. Arias, 202 F.3d at 558. Based upon those holdings, there is no violation of 18 U.S.C. §2511. If, however, this Court finds that Vieira violated the aforesaid statute, plaintiffs still are not entitled to any relief pursuant to Section 2511 because, as discussed hereafter, either the interception occurred within the ordinary course of business of defendants or the plaintiffs consented to the interception.

(a) Ordinary course of business exception

18 U.S.C. §2510 (5)(a)(ii) excludes from its definition of "electronic, mechanical or other device"…"any telephone… instrument, equipment, or facility, or any component thereof,…being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties." It is axiomatic that recording systems similar to Total Recall are regularly utilized in public facilities such as the Providence Public Safety Complex for legitimate business purposes. Police and fire departments commonly employ such recording systems in order to preserve and accurately recall messages pertaining to emergencies or official business, to monitor calls

for evaluating the speed and adequacy of the response to tips and complaints, and to oversee any abusive usage of the phone lines by employees.

In Arias v. Mutual Cent. Alarm Serv., 202 F.3d 553, 558 (2nd Cir. 2000), the court had to decide whether the blanket recording of plaintiffs' personal conversations was in the ordinary course of business of their employer. The plaintiffs argued that the surreptious, 24-hour recording of all telephone conversations did not fall within the purview of the aforesaid exception. Additionally, they contended that even if the recording of their private conversations was supported by a purportedly legitimate business purpose, defendant should have provided them with notice if such blanket recording was to fall within the ordinary course of business exception. That court disagreed with their arguments and found that legitimate business reasons supported the continual recording of all incoming and outgoing telephone calls at their employer's business, which was non-governmental. *Id.* at 558. Here, the equipment was installed and used for proper business or investigative purposes. As discussed, the Total Recall system was utilized for call cost accounting in order to eliminate, or at least minimize, any misuse of the lines for private purposes, long distance or "900" calls and to preserve and accurately recall messages relating to emergencies or official police business.

Similarly, in Amati v. City of Woodstock, 176 F. 3d 952 (7th Cir. 1999), cert. denied, 120 S. Ct. 445, 528 U. S. 985, 145 L. Ed. 2d 362 (1999), sixty-three

plaintiffs, who were employees or former employees of the local police department, and their family members and friends filed an action pursuant to the federal electronic-eavesdropping statute, 18 U.S.C. §2510 et seq. in which they asserted that calls, which they made on a line designated for personal use, were recorded without their knowledge and consent. A jury found in favor of the police chief and former police officers. On appeal, the court upheld their verdict. The defendants relied upon the statutory exclusion of eavesdropping by an "investigative or law enforcement officer in the ordinary course of his duties." 18 U. S. C. §2510 (5)(a)(ii). The court reasoned that it was routine and standard, hence "ordinary", for all calls to and from the police station to the recorded. *Id.* at 954. However, the plaintiffs argued that wiretapping cannot be "in the ordinary course of law enforcement" unless there is notice to the people whose conversations are being recorded. *Id.* at 955. The court rejected the plaintiffs' interpretation of the statute and held that if the "ordinary course" exclusion required proof of notice, it would have no function in the statute because there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception. *Id.* at 955, 18 U.S.C. §2511 (2)(c).

That court further interpreted "ordinary" to refer broadly to routine non-investigative recording of telephone conversations. As the court noted, this interpretation may have the same practical effect as the interpretation

mentioned earlier in which "ordinary course" included recording calls on one's own line; for ordinarily when police record calls as part of an investigation, they are recording calls on someone else's line. *Id.* at 955. The court explained that such recording is rarely an invasion of privacy, and for a reason that does after all bring the ordinary-course exclusion close to the consent exclusion: what is ordinary is apt to be known; it imports implicit notice. *Id.* at 955. Furthermore, the court reasoned that to record all calls to and from a police department is a routine police practice. *Id.* at 955. Jandak v. Village of Brookfield, 520 F.Supp. 815, 821-25 (D.C. Ill. 1981). Of interest, the court stated that the sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have invited many challenges. Amati at 956.

In the case at bar, the plaintiffs ostensibly allege, since their complaint is so laconic and obscure, that the mere recording of their phone conversations violates their statutory and constitutional rights. In essence, they contend that because their personal conversations were intercepted, the defendants are obligated to remunerate them for their spurious damages. That personal calls as well as official calls were made on the police lines is irrelevant since all employees make personal calls on company lines. If all the lines are taped, as in the ordinary practice of fire and police departments, then the recording of personal as well as official calls is within the ordinary course of business. *Id.* at

956. In this case, the record is devoid of any evidence which establishes that calls were recorded for surreptitious or unlawful purposes. Additionally, the plaintiffs do not aver that their conversations were recorded to intimidate or humiliate them. The Total Recall system indiscriminately and routinely recorded activities on established and designated lines, and is not comparable to the selective use of recording equipment to eavesdrop on a normally unmonitored telephone system in order to record specifically selected communications. See, Jandak v. Village of Brookfield, 520 F.Supp. 815 (D.C. Ill. 1981). As that court and others have concluded, Congress did not enact the section as mere surplusage and the exception should not be so narrowly read. *Id.* at 823. Here, the call cost accounting recording was not conducted for illicit purposes but to insure that the phones were not misused for private purposes. As such, the course of business exception is clearly applicable to Vieira and any recordings are exempted from the statute by Section 2510 (5)(a)(ii).

(b) Consent exception

The "ordinary course of business" exception is separate and distinct from the "consent" exception. According to U.S.C. §2511 (2)(c ), a person is permitted to intercept communications "where such person is a party to the communication or where one of the parties to the communication has given

prior consent to such interception." Arias v. Mutual Cent. Alarm Serv., Inc., 202 F.3d 553, 558 (2nd Cir. 2000); see e.g. United States v. Workman, 80 F.3d 688, 692-693 (2d Cir. 1996) (recognizing consent exception and stating that the consent may be express or implied). The consent may be implied in fact from surrounding circumstances indicating that the party knowingly agreed to the surveillance. Senate Rep. No. 1097, 90th Cong. 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. Admin. News, pp. 2112. The United States Court of Appeals for the First Circuit has recognized that the implied consent of one party to a communication may provide a defense to a claim that a person has intercepted a communication in violation of the Act. See United States v. Lanoue, 71 F.3d 966, 981 (1st Cir. 1995). The appeals court noted that implied consent is not constructive consent but rather "consent in fact." *Id.* at 981. Moreover, while consent should not be casually inferred, it may be implied in some circumstances notwithstanding insufficient notice. See *id.* Here, the phone recording system was submitted to and purchased after public bidding. During and subsequent to that process, many representatives from various departments within the Public Safety Complex attended meetings and training sessions during which the recording system and, more particularly, its use and capabilities were openly discussed.

A related issue is whether plaintiffs had an expectation that their conversations were free from interception. See 18 U.S.C. §2510(2) (defining

oral communication as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation"). Anderson v. City of Columbis, 374 F.Supp. 2nd 1240, 1251 (2005). The Eleventh Circuit has held that this is a two-step inquiry: (1) whether plaintiff "had a subjective expectation that his conversations were free from interception"; and (2) whether that expectation was objectively reasonable." Walker v. Darby, 911 F.2d 1573, 1577(11th Cit. 1990). Here, plaintiffs have not even alleged any expectation that their calls to the Public Safety Complex were free from interception. Accordingly, it is clear that the plaintiffs expressly or, at the very least, impliedly consented to the interceptions because they knew or should have known from the totality of the circumstances that their conversations would be recorded.

## III. Defendant, Manuel Vieria did not engage in the unauthorized interception, disclosure or use of wire, electronic or oral communications.

In Count 4 of their complaint, plaintiffs assert that the defendants, including Vieria, violated R.I. Gen. Laws Section 11-35-21. In their pre-trial conference statement, plaintiffs admit that in order for them to recover under the aforementioned statute, they must demonstrate that Vieria "willfully intercepted ...... any wire, electronic or oral communication." Obviously, the operative term is "willful" which connotes intentional or

deliberate conduct. As this Court is aware, the State Police concluded that there was no evidence to support the filing of criminal charges against the defendants. Additionally, although the plaintiffs have deposed four defendants and Stephen Moise, they have not produced any evidence which establishes that defendants, including Vieria, engaged in the willful or intentional interception of their phone conversations. In fact, Vieira confirmed at his deposition that he did not have a password or administrative access to the system.

## IV. Defendant, Manuel Vieira, did not violate Plaintiffs' right to privacy.

In Count V of their complaint, plaintiffs maintain that the actions of defendants, including Vieira, in installing, using and maintaining the Total Recall system deprived them of their right to privacy in violation of R.I. Gen. Laws §9-1-28.1. In their complaint, the plaintiffs fail to identify the sub-section(s) of said statute which support their allegations. For the purposes of this analysis, it will be assumed that plaintiffs rely upon (a)(1) which prescribes that every person in this state shall have "the right to be secure from unreasonable intrusion upon their physical solitude or seclusion." According to that section, in order to recover for violation of this right, it must be established that:

(a) it was an invasion of something that is entitled to be private or would be expected to be private;
(b) the invasion was or is offensive or objectionable to a reasonable man.

Initially, it is incumbent to ascertain if the installation and use of the recording system on the phones in a workplace setting such as a police or fire department necessarily constitutes an invasion of privacy. In the instant case, plaintiffs have failed to show that they had a reasonable expectation of privacy in their phone conversations. Stated broadly, workplaces or commercial settings often are subject to less protection than dwellings. Blake v. Wright, 179 F.3d 1003, 1009 (6th cir. 1999); see, O'Connor v. Ortega, 480 U.S. 709, 718, 107 S. Ct. 1492, 1501, 94 L.Ed. 2d 601 (1987). In O'Connor, the Supreme Court stated that "operational realities of the workplace, however, may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than law enforcement agent." 480 U.S. at 717. A plurality of the justices held that the "privacy interests of government employees in their place of work" … "are far less than those found at home or in some other contexts." *Id.* at 725. The Supreme Court further concluded that although employees have an expectation of privacy in their workplace, that expectation is not without limits. *Id.* at 718.

In this case, numerous meetings and training seminars were held during which the computer recording system was openly discussed. Employees and

their supervisors in the fire and police departments shared information about the system and its capabilities. Additionally, the Communications Department had a policy which required the execution of a form and written consent by the parties before a telephone conversation could be accessed and downloaded for playback purposes. According to testimonial evidence, two telephone conversations were retrieved and listened to by police and fire personnel. Thus, the plaintiffs knew or should have known that their conversations may be recorded. In view of the nature of the work environment at the Public Safety Complex, any recordings were tenable and justified.

Next, it is necessary to examine whether the plaintiffs' subjective expectations that their conversations were free from interception were objectively reasonable. As previously noted, the expectation of privacy in a place of business is less than a similar expectation in a person's home. United States v. Leary, 846 F.2d 592, 597 n.6 (10th Cir. 1988). Whether an employee has an objectively reasonable expectation of privacy in the workplace is determined on a case-by-case basis. United States v. Angevine, 281 F.3d 1130, 1134 (10th Cir. 2002). Therefore, it is necessary "to examine all of the circumstances of the working environment and the relevant search." United States v. Anderson, 154 F. 3d 1225 (10th cir. 1998). Contrary to the contentions in their complaint, plaintiffs have not adduced any evidence which shows that Vieria violated §9-1-28.1. In fact, in their answers to defendants'

interrogatories numbered 18 and 19, all of the plaintiffs concede that they lack any personal knowledge or information supporting their allegation.

> 18. Please describe by date and by identity of the participants involved, each and every occasion on which you and/or any of the Plaintiffs had a telephone conversation, or a portion thereof, that was actually listened to by any individual Defendant, or by anyone acting on his/her behalf, either contemporaneously or subsequently, and that is related in any way to the allegations in Plaintiff's Complaint.
>
> Answer No. 18: I have no personal knowledge that any of the named individual defendants actually listened to any of my conversations.
>
> 19. Please describe by date and by identity of the participants involved, each and every occasion on which you and/or any of the Plaintiffs had a telephone conversation, or a portion thereof, that was actually listened to by anyone who was not a party to the telephone conversation, either contemporaneously or subsequently, and that is related in any way to the allegations in Plaintiffs' Complaint.
>
> Answer No. 19: I have no information that anyone who is not a party to this matter listed to any conversations involved in this action.

**V. Defendant, Manuel Vieira, did not engage in the interception of wire, electronic and oral communications.**

In the sixth and final count of the complaint, plaintiffs contend that defendants, including Vieira, violated R.I. Gen. Laws §12-5.1-1 et seq. which is the state version of the Federal Wiretap Act. In order to recover, the plaintiffs must establish that they are "aggrieved persons" under the statute. That term is

defined as "an individual who was a party to any intercepted wire, electronic or oral communication or against whom the interception was directed." §12-5.1-1(1) Additionally, "oral communication" includes "any oral communication uttered by a person exhibiting an expectation that the communication is not subject to interception under circumstances justifying that expectation, but the term does not include any electronic communication." §12-5.1-1(10) Here, any conversations which may have been recorded do not constitute "oral communications" since the callers within the Public Safety Complex were probably aware that their calls were being recorded. As previously mentioned, prior and subsequent to the purchase of the Total Recall system, numerous meetings, which were attended by representatives from the Communications Center, and police and fire departments, were conducted in open forums and the system was requisitioned and purchased in accordance with standard municipal procedures. Hence, many, if not all, Public Safety Complex personnel had some belief --if not actual notice -- that conversations in the building may be recorded. Moreover, there is no evidence to even suggest that any steps were initiated to conceal or misrepresent the capabilities of the system. As a result, the plaintiffs should not be considered "aggrieved persons" and their telephone conversations do not qualify as "oral communications" as defined by the Statute.

## CONCLUSION

In the present case, plaintiffs allege that defendants, including Vieira, individually and in their official capacity, violated their constitutional and statutory rights by using, installing and maintaining the Total Recall System. However, their complaint is replete with obtuse and unsupported assertions. Moreover, the record in this case, which consists of the deposition testimony and answers to interrogatories, leads to only one reasonable conclusion – that there are no material issues of fact to be decided by a trier of fact. Even if plaintiffs demonstrated sufficient evidence to create genuine issues of material facts, which defendant Vieira vigorously denies, he is still exempt from liability because of the affirmative defenses including, but not limited to, qualified and supervisory immunity, consent and ordinary course of business exception, which he raised in his amended answer and which were discussed above. Accordingly, defendant Vieira respectfully requests that his motion for summary judgment be granted and that this case be dismissed against him both personally and in his official capacity.

Respectfully submitted,
Manuel Vieira,
By His Attorney,

George L. Santopietro, Esq.--#2056
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
751-5522/331-3758