**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, ET AL

VS. C.A. NO. 04-304S

CITY OF PROVIDENCE, ET AL

Consolidated with:

JOHN C. CHMURA, ET AL

VS. C.A. NO. 04-553S

CITY OF PROVIDENCE, ET AL

**DEFENDANTS', DEAN ESSERMAN, DAVID CICILLINE AND THE CITY OF PROVIDENCE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

Now come the Defendants in the above-entitled matter, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, and move for Summary Judgment on the grounds that there are no genuine issues of material fact and the Defendants are entitled to judgment as a matter of law. In the alternative, Defendants, pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure, move to dismiss the Complaints on the grounds they fail to state a claim upon which relief can be granted.

The Defendants rely on their accompanying memorandum in support thereof.

Defendants,
By their Attorneys:

Joseph M. Fernandez, City Solicitor

/s/ Kevin F. McHugh
Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
City of Providence Department of Law
275 Westminster Street
Providence, Rhode Island 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (fax)
kevin_mc1950@hotmail.com

Certificate of Service

I hereby certify that on this 14th day of September, 2006, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document was served by electronic mail upon:

Susan M. Carlin, Esq.
Stephen R. Famiglietti, Esq.
Famiglietti & Carlin, Ltd.
The Lincoln Center
132 Old River Road, Suite 205
Lincoln, RI 02865
Famcarltd@aol.com

Mark A. Fay, Esq.
Murphy & Fay, LLP
127 Dorrance Street, 2nd floor
Providence, RI 02903
mark@murphyandfay.com

Dean G. Robinson, Esq.
670 Willett Avenue
East Providence, RI 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esq.
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
gsantopi@coilepore.com

I further certify that on said date, a copy of the foregoing was caused to be served on the following attorney(s) by regular mail, postage prepaid.

Carolyn Mannis, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

/s/ Kevin F. McHugh
Kevin F. McHugh

**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, ET AL

VS. C.A. NO. 04-304S

CITY OF PROVIDENCE, ET AL

Consolidated with:

JOHN C. CHMURA, ET AL

VS. C.A. NO. 04-553S

CITY OF PROVIDENCE, ET AL

**DEFENDANTS', DEAN ESSERMAN, DAVID CICILLINE AND THE CITY OF PROVIDENCE'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION TO DISMISS**

## I. Statement of Facts

These consolidated cases involve 154 Plaintiffs and six Defendants. The Defendants are: City of Providence, by and through Steven T. Napolitano, its Treasurer; David N. Cicilline, its Mayor and Acting Public Safety Commissioner; Dean Esserman, in his Capacity as Chief of Police; Urbano Prignano, Jr., individually and in his capacity as former Chief of Police; Manuel Vieira, individually and in his former capacity as Communications Director; Mary Lennon, individually and in her former capacity as Chief of Operations of the Communications Department; and John Does 1-25.

Since Defendants Esserman and Cicilline are sued in their official duties only and this is a 42 U.S.C. § 1983 case, the suit is really one against the municipality itself. See

Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Thus, for the purposes of this memorandum, Defendants Cicilline, Esserman and the City of Providence shall be referred to as the Municipal Defendants.

The Complaints contain 6 Counts.

The cases arise from the initial telephone system that was installed in the new public safety complex sometime in 2002.

As part of the new public safety complex, a new telephone system was to be installed. That system was put out to bid pursuant to Section 1007 (c) (1) of the Providence Home Rule Charter. (Exhibit A).

The Request for Proposal was for "furnish and install telephone and data equipment and cable for new Fire and Police Complex" and was dated July 30, 2001. (Exhibit B).

On January 14, 2002**,** the Board of Contract and Supply awarded Expanets the contract for what was known as the Total Recall System (Exhibit C).

That system was to record all lines coming into and out of the public safety complex as well as the communications center. It did not record station-to-station calls; nor did it record the private numbers in the various fire stations. (Deposition of Stephen Moise, pp. 72, 73; deposition of Anthony Desmarais, pp. 86, 87).

Only three of the calls were ever downloaded and listened to. (Deposition of Moise, p. 79). One was from a request by Chief Dutra of the Fire Department regarding a man in the water and the Fire Department's response. (Vieira deposition, pp. 142,143). A second request was made by Major Dennis Simoneau of the Police Department regarding

the towing of a car. (Lennon deposition, p. 153). A third request was from a City Councilman. (Deposition of Stephen Moise, p. 79).

On July 22, 2002, Major Simoneau sent an e-mail to the entire police department and its staff, indicating that the telephone lines in the complex may be taped. (A copy of the e-mail and a list of those receiving it are attached as Exhibit D).

On February 14, 2003, Defendant Dean Esserman learned of the existence of the Total Recall System and ordered it disconnected. It remains disconnected at the Providence Public Safety Complex. (Deposition of Anthony Desmarais, p. 63).

Defendants complained about the Total Recall System to the Rhode Island State Police on February 14, 2003. The Rhode Island State Police responded to the public safety complex and launched an investigation of the Total Recall System. (A narrative of the investigation is attached hereto as Exhibit E).

The State Police investigation was forwarded to the Attorney General's office for review and determination as to whether the action of certain individuals was warranted for criminal liability. (Exhibit E, p. 42).

The Attorney General's office determined that there was no criminal liability. (See p. 18 of Memorandum of Special Assistant Attorney General Ronald R. Gendron relating to the "Total Recall" telephone recording system at the Providence Public Safety Complex attached hereto as Exhibit F).

These lawsuits followed.

## II. Statement of the Law

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Summary judgment is appropriate when the record documents that possess evidentiary force "show that there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c). Once the moving party avers "an absence of evidence to support the non-moving party's case, the burden of production shifts to the non-movant." Corp. v. Catrett, 477 U .S. 317, 325 (1986). To defeat a motion for summary judgment, the non-movant must tender "significant probative evidence" which, when viewed in the light most flattering to the non-movant, illumines a genuine and a material factual dispute. See First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Medina-Monoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). While the required proof need not necessarily rise to the level of admissible trial evidence, see Celotex, 477 U.S. 317; 106 S.Ct. 2548 (June 25, 1986), it must consist of something more than "conclusory allegations, improbable inferences, and unsupported speculation."

In a Rule 12(b)(6) motion, the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

In determining whether the plaintiff can survive a 12(b)(6) motion, a court must accept as true all "well-pleaded" factual allegations in the complaint, e.g., Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); Edwards v. John Hancock Mutual Life Insurance Co., 973 F.2d 1027, 1028 (1st Cir. 1992); see also United States v. Gaubert, 499 U.S. 315, 327 (1991). Similarly, the court must draw all reasonable inferences in the favor of the plaintiff. Aulson v. Blanchard, 83 F.3d at 3; Coyne v. City of Somerville, 972 F.2d 440, 443 (1st Cir. 1992). In drawing inferences from the complaint's allegations, the First Circuit has held that a court need not credit subjective characterizations, unsupported conclusions, bald assertions, and vituperative allegations. E.g., Id. at 444; Correa-Martinez v. Arrillaga-Belendez, 903 F.2d at 52-53; Aulson v. Blanchard, 83 F.3d at 3; The Dartmouth Review v. Dartmouth College, 889 F.2d at 16. Unless a conclusion is logically compelled, or generally supported, by the facts alleged, the court is not required to afford it any deference. The Dartmouth Review v. Dartmouth College, 889 F.2d at 16.

Even when providing the plaintiff's complaint with the required deferential review, the First Circuit has nonetheless held complaints to some minimal standard of pleading; see e.g., The Dartmouth Review v. Dartmouth College, 889 F.2d at 14, recognizing that the "threshold [for stating a claim] may be low, it is real." Gooley v. Mobil Oil Corp., 851 F.2d at 514. As the First Circuit has stated:

> Modern notions of 'notice pleading' notwithstanding, a plaintiff . . . is nonetheless required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.

Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992) (quoting Gooley v. Mobil Oil Corp., 851 F.2d at 515). Thus, "each general allegation

[must] be supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20 (1st Circuit 1990).

## III. Argument

### A. The Complaints, as drafted, are insufficient to make out a Monell violation.

"It is well established that a municipality cannot be held liable under Section 1983 on a theory of respondeat superior; rather, a plaintiff must plead and prove an injury caused by an action taken pursuant to official municipal policy or custom." Baxter v. Conte, 190 F.Supp. 2d 123, 128 (D.Mass. 2001), citing Monell v. Dep't. of Social Services, 436 U.S. at 691; see also Fedor v. Kudrak, 421 F.Supp. 2d 473, 481, (D.Conn. 2006), quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2nd Cir. 1995) ("In order to state a claim under Monell . . . a plaintiff must plead and prove: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'"). These requirements square with the principle that "[m]unicipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional tort of their agents." Auriemma v. Rice, 957 F.2d 397, 399 (7th Cir. 1992), citing Monell v. Department of Social Services of City of New York, 436 U.S. 658. While municipal liability may exist "when execution of [a municipal] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ ] the injury," it does not exist here.

Next, assuming *arguendo*, Plaintiffs could prove the elements listed above and their failure to plead them proves fatal to their claim, the standard articulated in Fedor

and Zahra, which makes clear that the elements must be *pled* and *proved*. See generally Fedor v. Kudrak, 421 F. Supp. 2d 473. (D. Conn. 2006)

Plaintiffs allege, in their complaints, that by "installing and maintaining the 'Total Recall' system," Defendants "violated Plaintiffs' constitutionally protected Fourth Amendment rights: specifically, the Fourth Amendment right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Complaints, Count One. Nowhere in their complaints, however, do Plaintiffs "identify either an official municipal policy or a widespread custom or practice that caused their injuries, as is required to properly maintain a § 1983 action against a municipality. See generally, Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). This omission forecloses Plaintiffs' right to validly assert a *Monell* claim, and therefore forecloses their ability to recover from the Municipal Defendants under § 1983. See Id.

In sum, "the touchstone of [a] § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution. . . ." Monell v. Department of Social Services of City of New York, 436 U.S. at 690. Here, no such allegation has been properly made. There is a long line of cases that can be traced from Circuit to Circuit that demonstrates this necessity in pleading. See generally: Soto v. Brooklyn Correctional Facility, 80 F.3d 34, 36 (2nd Cir. 1996) (plaintiff's complaint might have survived a motion to dismiss had he alleged that Defendant had a custom or policy regarding the alleged constitutional deprivation of inadequately protecting detainees); Garrett v. Clarke, 147 F.3d 745. 747 (8th Cir. 1998) ("[a] city is not vicariously liable under Section 1983 for the acts of its employees . . . .

[Plaintiffs'] complaint fails to state a claim against [Defendant] because it merely names it as a defendant without identifying any such policy, custom, or practice"); Edwards v. City of Goldsboro, 178 F.3d 231, 245 (4th Cir. 1999) (complaint containing allegations that the City delegated authority to its agents and employees "to formulate, develop and administer employment and personnel policies and practices for the City, including those policies and practices" that caused the constitutional deprivation, was sufficient to avoid dismissal of Plaintiff's § 1983 claims against the City under Monell).

The allegations in the complaints don't even come close to meeting the requirements for a 42 U.S.C. § 1983 claim. Count One should be dismissed.

**B. The municipal defendants have not violated the plaintiffs' Fourth Amendment rights.**

Even if the Court finds that the complaints properly allege a Monell claim, the Plaintiffs have insufficient evidence to prove the same. Count One provides:

> COUNT ONE
> (Fourth Amendment/42 U.S.C. § 1983)
>
> 55. The actions of the Defendants as alleged, including, but not limited to, using, installing and maintaining the "Total Recall" system violated Plaintiff's constitutionally protected Fourth Amendment rights; specifically, the Fourth Amendment right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.
>
> 56. As a direct result of the violation of Plaintiffs' Fourth Amendment rights, they sustained personal injuries and other damages.
>
> WHEREFORE, Plaintiffs seek that the Court issue the following relief pursuant to 42 U.S.C. § 1983:
>
> 1. Enter a Declaration that the Defendants violated Plaintiffs' Fourth Amendment rights;

2. Award Plaintiffs their compensatory damages;

3. Award costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

4. Award prejudgment interest and such further relief as this Court deems fair and just.

Count Two provides:

COUNT TWO
(Article I, Section 6 of the Rhode Island Constitution)

57. The actions of the Defendants as alleged, including, but not limited to, subjecting the Plaintiffs' telephone conversations to the "Total Recall" system violated their constitutionally protected rights as set forth in Article I, Section 6 of the Rhode Island Constitution, specifically the constitutionally protected right to be secure in their persons, papers and possessions, against unreasonable searches and seizures.

58. As a direct result of the violation of Plaintiffs' rights as set forth in Article I, Section 6 of the Rhode Island Constitution, they sustained personal injuries and other damages.

WHEREFORE, Plaintiffs seek that the Court issue the following relief:

1. Enter a Declaration that the Defendants violated Plaintiffs' rights as set forth in Article I, Section 6 of the Rhode Island Constitution;

2. Award Plaintiffs their compensatory damages;

3. Award Plaintiffs their costs, including reasonable attorney's fees;

4. Award prejudgment interest and such further relief as this Court deems fair and just.

Article I, Section 6 is essentially the same as the Fourth Amendment. In fact, the Rhode Island Supreme Court has said that this Section has the same effect as the Fourth Amendment. See State v. Davis, 105 R.I. 247, 231 A.2d 394 (R.I. 1969).

That Court has also stated that this section of the Rhode Island Constitution and the Fourth Amendment both protect an individual's reasonable expectations of privacy. See State v. Bennett, 430 A.2d 424 (R.I. 1981).

Thus, they should be analyzed the same way. That way should be under 42 U.S.C. § 1983 since that is the statute that has been pleaded and that is the vehicle for bringing Fourth Amendment claims.

To make out a case against a municipality under 42 U.S.C. § 1983 is no easy task. The municipal liability standard requires proof that the Plaintiff's injury was caused by an action taken pursuant to official municipal policy on custom. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). As the municipal defendants have already articulated the elements necessary to prove municipal liability under 42 U.S.C. § 1983 in Section III (A), they will not repeat them here.

However, Defendants will point out that the Plaintiffs must demonstrate that it was the official policy of the City to violate citizens' privacy or that it was a widely accepted and known custom of the City to violate citizens' Fourth Amendment rights.

This, they cannot do. As to the underlying actions of intercepting the calls, the Defendants deal with this in Section C of their Argument and will not repeat their argument here.

As to whether or not the interception of the calls was an official policy of the City, the Plaintiffs need to identify an official with final policymaking authority who instituted violating the Plaintiffs' rights. This, they have not done.

The first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. See City of Canton v. Harris, 489 U.S. 378, 385-386 109 S.Ct. 1997, 1203 (1986). It is necessary to establish the existence of a municipal policy or custom before liability may attach, because it is only through the municipality's establishment of a policy or custom that the municipality *itself* - as opposed to its agents - may be said to have acted so as to have caused the constitutional violation. Pembaur v. City of Cincinnati, 475 U.S. 469, 479-480, 106 S.Ct. 1292, 1298 (1986).

Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered **. . . .** The fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion . . . .The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable**.** Pembaur v. City of Cincinnati, 475 U.S. 469, 479-480, 106 S.Ct. 1292, 1298 (1986). Consequently, a distinction must be drawn between those municipal officials who are "final**"** policymakers and those other officials who *merely exercise* discretion or are just policymakers without *final* policy making authority. The exercise of discretion by an official without *final* policymaking authority cannot establish municipal liability. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986).

Moreover, even where a final policymaker delegates authority to another official, then the decisions made by that official cannot constitute municipal policy unless the policymaker not only approves that decision, but also approves the basis for it.

In the instant case, there has been no evidence uncovered of a final policymaker for the City of Providence making a conscious choice among alternatives to tape all the calls going into and out of the public safety complex.

Only two cases exist regarding who is a final policymaker for the City of Providence: Sean Patrick v. City of Providence, C.A. No. 96-689L (D.R.I. April 24, 1998) (Lagueux), (a copy of same attached hereto as Exhibit G); and Young v. City of Providence, 404 F.3d 4 (1st Circuit 2005).

Sean Patrick was a 42 U.S.C. § 1983 case in which an adult entertainment establishment owner sued the City for harassment. The Chief of Police had authorized a four-day period of stepped-up enforcement of the City's ordinances and state statutes at all adult entertainment establishments. The Court dismissed the case at the close of the Plaintiff's case on the grounds that the Plaintiff had not shown that a final policymaker for the City of Providence had authorized the action. The Court specifically found that the final policymakers for the City of Providence are the Mayor and the City Council.

Young v. City of Providence was a 42 U.S.C. § 1983 case involving allegations of failure to train. One of the individual defendants in that case was the Chief of Police, Urbano Prignano, Jr., who is also a defendant in this case.

In the Young case, in ruling on Prignano's motion for summary judgment, the Court ruled that Prignano was a final policymaker in the Police Department. (Decision, p. 41).

In this case it is undisputed that Urbano Prignano, Jr. retired from the City of Providence on January 31, 2001. (Depo. of Prignano, p. 8). It is also undisputed that the Total Recall System was not used until July or August of 2002. (Deposition of Manuel Vieira, p. 58).

Thus, there is no evidence that Prignano had anything to do with the Total Recall System.

The current police chief, Dean Esserman, is also a defendant in this case in his official capacity. When he learned of the Total Recall System's existence, he ordered it removed. (Deposition of Stephen Moise, p. 37, deposition of Anthony Desmarais, p. 63). Thus, if one accepted the Chief of Police for the City of Providence as a final policymaker for the police department, then a final policymaker for the police department rejected the Total Recall System and ordered it removed.

There is no evidence that the Mayor and the City Council were involved in the Total Recall System. Thus, the 1983 claim against the City must fail as a matter of law.

Since the Plaintiffs have no proof of an official municipal policy, they cannot show a direct causal link to the alleged constitutional tort. Without that link, there can be no municipal liability.

In fact, at least one court has held that in cases such as this, Plaintiffs must prove that the municipality had an official written policy to violate employees' privacy rights. See Abbott v. Village of Winthrop Harbor, 205 F.3d 976 (7th Cir. 2000), at 981.

Even if the Court were to find there was an official municipal policy, there is no Fourth Amendment violation, anyway. The Defendants deal with this in the Total Recall System not being a violation of 18 U.S.C. § 2511 in Section C of their Memorandum.

The Complaints smack of respondeat superior. "Their employees did it, so the City is liable." That is simply not the law. That's why, as drafted, the Complaint fails to state a claim upon which relief may be granted against the municipal employees.

The instant complaints come nowhere near the evidence or type of pleading necessary to make out a *Monell* claim against the City. Thus, the Complaints should be dismissed.

**C. The Total Recall System was not a violation of 18 U.S.C. § 2511**

Count Three provides:

> **Count Three**
> (18 U.S.C. § 2511)
>
> 119. The actions of the Defendants as alleged, including, but not limited to, installing, using, and maintaining the "Total Recall" system violates 18 U.S.C. § 2511.
>
> 120. As a direct result of the Defendants violation of 18 U.S.C. § 2511 Plaintiffs suffered personal injuries and other damages.
>
> **WHEREFORE**, Plaintiffs seek that the Court issue the following relief in accordance with 18 U.S.C. § 2520:
>
> a. Enter a Declaration that the Defendants violated Plaintiffs' rights as set forth in 18 U.S.C. § 2520:
>
> b. Award Plaintiffs their compensatory damages or statutory damages of which ever is the greater of $100 a day for each day of violation or $10,000.00;
>
> c. Award Plaintiffs punitive damages;
>
> d. Award Plaintiffs their costs, including reasonable attorney's fees;
>
> e. Award prejudgment interest and such further relief as this Court deems fair and just.

The plaintiffs allege that the installation and use of the system violated 18 U.S.C. § 2511. This section is part of Title III of the Omnibus Crime Control and Safe Streets

Act of 1968, which authorizes the use of electronic surveillance for specified classes of crimes. United States v. United States Dist. Court for Eastern Dist., 407 U.S. 297, 302 (1972). It represents a comprehensive attempt by Congress to promote more effective control of crime while protecting the privacy of individual thought and expression. Id.

There has been no violation of the statute because the Total Recall System falls under the exemption listed under 18 U.S.C. § 2510 (5) (a) (ii) which provides:

> **(5)** "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than—
> **(a)** any telephone or telegraph instrument, equipment or facility, or any component thereof,
>
> * * *
>
> ; or
> **(ii)** being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

In Amati v. City of Woodstock, 176 F.3d 952 (6th Cir. 1999), which is factually similar to the instant matter, the plaintiffs argued that they were entitled to judgment as a matter of law on the Title III claim because the evidence, even when construed as favorable to the defendants, nevertheless established a violation. See Amati, 176 F.3d at 954. In that case, the plaintiffs, employees and former employees of the police department, and their friends and family members, used a particular telephone line for personal calls. Id. The plaintiffs were allegedly unaware that the calls were being recorded. Id. Although the Court found that the taping was a *prima facie* violation of § 2511 (1), it held that the taping came within the statutory exclusion of eavesdropping "by an investigative or law enforcement officer in the ordinary course of his duties." See Id., citing 18 U.S.C. § 2510 (5) (a) (ii). For all calls to and from a police station to be

recorded, the Amati Court ruled, is routine and therefore "ordinary," as exempted by the statute. Id. at 952.

Here, Major Simoneau made an attempt to inform the Providence Police and the Communications Department of the recording calls. (See Exhibit D, Simoneau e-mail). However, the success of this announcement is rendered irrelevant by the decision in Amati, as the "ordinary" exception of § 2510 applies. The system was installed in the Providence Public Safety Complex for the same reasons described by the Amati Court in its analysis of § 2510, i.e., evidence and evaluation of the speed and adequacy of the response of the police to any complaint and call for emergency assistance. Id at 95. (Deposition of Richardson pp. 31, 32).

The Amati Court rejected the notion that wiretapping cannot be in the ordinary course of law enforcement unless there is express notice to the people who are being listened to. Id at 955.

According to the Amati Court, if ordinary course of law enforcement includes anything, it includes the recording of all calls to and from a police department. Id at 956 citing Jandak v. Village of Brookfield, 520 F.Supp. 815, 821-25 (D.C. Ill., 1981).

In fact, the Amati Court went out of its way to give an example of what would not be routine: tricking people into making damaging admissions over the phone by announcing that calls to and from the police department were not being recorded and then recording them anyway. Id at 956.

It should also be noted that unlike the instant case, the calls in Amati were listened to and there still was no violation.

The Amati Court found irrelevant the fact that personal calls were being recorded there because all employees make personal calls on company phones and if all the calls are recorded, then recording personal as well as official calls is within the ordinary course. Id at 976.

Such is the case here. In Adams v. City of Battle Creek, 250 F.3d 980 (6th Cir. 2001), the Court did not analyze the business use and law enforcement exceptions separately. However, they did opine that the Congress probably created the law enforcement exemption to make clear that the routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute. See First v. Stark County Board of Commissioners, No. 99-3547; 234 F.3d 1268 (2000).

**D. Plaintiffs are unable to simultaneously pursue their § 1983 claims and claims under 18 U.S.C. § 2511, R.I. Gen. Laws §§ 11-35-21, 9-1-28.1 (a)(1) and 12-5.1-1.**

Plaintiffs' complaint, as drafted, is insufficient to allege that Plaintiffs' civil rights were violated pursuant to Monell. Therefore, Plaintiffs cannot recover under § 1983, as discussed *supra*. Even if § 1983 were properly pled, this Court nevertheless should refuse to allow Plaintiffs to pursue the § 1983 claim, as this case must be analyzed under the rubric of the statutory claims asserted, rather than under the constitutional claim. The U.S. Supreme Court has made clear that courts should avoid the unnecessary adjudication of constitutional issues. Adams v. City of Battle Creek, 250 F.3d 980, 986 (6th Cir. 2001), citing Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass on a constitutional question, although

properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). With regard to the federal wiretapping statute specifically, the Adams Court went on to explain:

> One application of this doctrine is the principle of statutory construction that states that a comprehensive statute, like the federal wiretapping statute, designed to protect specific constitutional values may be read to provide the exclusive remedies in the field so long as the statute itself suffers no constitutional infirmity. Sutherland Statutory Construction § 499-500 (1984 ed.). . . . No claim is made that the statute is unconstitutional or that it is less protective of privacy rights than the Fourth Amendment. The plaintiff makes no claim that Fourth Amendment rights, as they relate to wiretapping, are broader or more comprehensive than the federal statute. There is no difference between the conduct relevant to plaintiff's statutory claim and the conduct relevant to his constitutional claim.

Adams v. City of Battle Creek, 250 F.3d at 986.

The factors listed by the Adams Court apply here. First, Plaintiffs have not asserted that the statutes referenced in their complaint are unconstitutional or are less protective of privacy rights than the Fourth Amendment. Second, Plaintiffs make no claim "that Fourth Amendment rights, as they relate to wiretapping, are broader or more comprehensive than the federal statute." In fact, courts have held that the statutory procedures of Title III comport with the Fourth Amendment. See United States v. Cafero, 473 F.2d 489, 499 (3rd Cir.1973). Finally, here, "there is no difference between the conduct relevant to [Plaintiffs'] statutory claim and the conduct relevant to [their] constitutional claim[s]." Adams v. City of Battle Creek, 250 F.3d at 986.

The Plaintiffs cannot simultaneously pursue relief under the federal and state wiretapping statutes. See generally Whitaker v. Garcetti, 291 F.Supp.2d 1132

(C.D.Cal.,2003). In Whitaker, Plaintiffs filed claims under §1983 as well as state and federal wiretapping statutes. The Court held that where "the Defendants are local rather than federal officials and municipalities and . . . the two wiretapping statutes regulate the same sphere of conduct, the operative directive…is" the state, not federal, wiretapping statute. Id. at 1141, citing Pac. Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n, 461 U.S. 190, 212-213 (1983); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963). The Whitaker Court went on to describe the exception to the rule, where there is explicit preemption by Congress:

> It is accepted that Congress has the authority, in exercising its Article I powers, to preempt state law…In the absence of an express statement by Congress that state law is preempted, there are two other bases for finding preemption. First, when Congress intends that federal law occupy a given field, state law in that field is preempted. Pac. Gas at 212-13. Second, even if Congress has not occupied the field, state law is nevertheless preempted to the extent it actually conflicts with federal law; that is, when compliance with both state and federal law is impossible, Florida Lime and Avocado Growers at 142-43, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248 (1984); Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

See generally Whitaker v. Garcetti, 291 F.Supp.2d at 1141.

The First Circuit, too, utilizes this framework. See Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 447 (1st Cir. 2000).

> [W]here there is no explicit statutory language preempting state law, this Court will find implied preemption under one of two circumstances: (1) where the federal statutory scheme is so pervasive that Congress clearly intended to "occupy the field" to the exclusion of state law, or (2) where

> a particular state law is in direct conflict with the federal law to an extent that the statutes cannot coexist.

Id., citing Summit Inv. & Dev. Corp., v. Leroux, 69 F.3d 608, 610 (1st Cir.1995); MSR Exploration Ltd. v. Meridian Oil, Inc., 74 F.3d 910, 913 (9th Cir.1996) (quoting Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982)).

These exceptions do not apply here, as "[i]t is well accepted that Congress' wiretapping statute was not an attempt to occupy the field, but merely an attempt to establish minimum standards." See generally Whitaker v. Garcetti, 291 F.Supp.2d at 1141. Therefore, Plaintiffs are entitled to pursue relief solely under the Rhode Island wiretapping statute, since where the Municipal Defendants "are local rather than federal officials and municipalities and . . . the two wiretapping statutes regulate the same sphere of conduct, the operative directive . . . is" the state, not federal, wiretapping statute. Id. Moreover, the state statute at issue here is almost identical to the federal statute.

**E. The city cannot be liable for violations of the statutory claims asserted in this case.**

As explained *supra*, Plaintiffs are entitled to pursue relief solely under the Rhode Island wiretapping statute. This principle does not prohibit analysis of the claim under the jurisprudence of the federal statute, however. This is especially true where the state statute mirrors the federal statute with regard to the provision at issue, and where there is a lack of case law interpreting the state statute. See 2B Sutherland Statutory Construction § 52:2 (6th ed.); see also In re O'Connor, 44 A. 591 (R.I. 1899) ("When a statute is adopted which has already received judicial construction, it is to be presumed that it was adopted in view of such construction."), citing Miller v. Coffin, 19 R.I.164; End. Interp. St. § 371, notes 80, 81; Sayles v. Bates, 15 R. I. 342. Where a statute is almost a literal

copy of a statute of another jurisdiction, it is proper, in construing the statutory language, to resort to the interpretations of the court of the jurisdiction which first enacted the statute. 2B Sutherland Statutory Construction § 52:2. Therefore, it is proper and instructive to look to how federal courts have construed the federal wiretapping statute, insofar as it is mirrored by the Rhode Island statute.

Municipalities are immune from suit under the federal wiretapping statute. See generally Abbott v. Village of Winthrop Harbor, 205 F.3d 976 (7th Cir. 2000).

> . . . [M]unicipalities are immune from suit, not only because of the corroborating testimony in the legislative history, but simply because Congress has never amended the definition of "person" in § 2510(6). That definition unequivocally excludes local governmental entities from its definition of person and continues to apply to the entire chapter.

Id. at 980.

Under this rubric, it becomes even more apparent that there can be no recovery from a municipality under the Rhode Island statutes. The Circuit courts which have taken a different view from the Seventh Circuit regarding whether a municipality can be held liable under the federal wiretapping statute have done so based on an analysis that does not apply to the instant matter. Williams v. City of Tulsa, OK, 393 F.Supp.2d 1124, 1132 (N.D.Okla.,2005) ("[C]ourts are divided in their conclusions. Compare Adams v. City of Battle Creek, 250 F.3d 980, 985 (6th Cir.2001) (holding that the Act creates civil liability for municipalities); Conner v. Tate, 130 F.Supp.2d 1370, 1373-75 (N.D.GA.2001) (holding that the Act creates civil liability for municipalities) with Abbott v. Village of Winthrop Harbor, 205 F.3d 976, 980 (7th Cir.2000) (holding that the Act

does not create civil liability for municipalities); Anderson v. City of Columbus, 374 F.Supp.2d 1240, 1244-46 (M.D.GA. 2005) (following Abbott)").

Assuming, *arguendo*, that this circuit split will ultimately resolve contrary to the rulings of the Seventh Circuit, an application of the decisions of these other jurisdictions to Rhode Island's wiretapping statutes still indicates that there can be no recovery from the Municipal Defendants under the Rhode Island statutes. That is, the circuits which have ruled that there can be recovery from municipalities have done so based on an amendment to the federal statutes, an amendment never made to the state statute:

> The Act's eavesdropping prohibition applies to any "person." § 2511 . . .[P]rior to 1986, the section creating civil liability referred only to a cause of action against a "person;" that year, the Congress amended the civil liability section to read "any person whose . . . communication is intercepted ... may in a civil action recover from the person **or entity** . . . " § 2520 (emphasis added)….The Sixth Circuit, interpreting the . . . statutory text, but looking to the Senate Committee Report on the parallel prohibition of intercepting stored communications, concluded that the Congress did intend to create municipal liability with the 1986 amendment. Adams v. City of Battle Creek, 250 F.3d 980, 985 (2001) (citing S. Rep. 99-541, at 43 (1978), as reprinted in 1986 U.S.C.C.A.N. 3555, 3597).

Williams v. City of Tulsa, OK, 393 F.Supp.2d at 1131-1132.

The Rhode Island statutes contain no language synonymous to the 1986 amendment, i.e., the "or entity" language. Even if this Court declines to adopt the views of the Seventh Circuit, that municipalities cannot be liable under the federal statute, and does adopt the rationale of the circuits which have split from the Seventh Circuit, *the omission of the word "entity" from the Rhode Island statutes would nevertheless preclude recovery from a municipality under the Rhode Island statutes*.

No matter which analysis is employed, the same set of facts applies here.

In the Anderson case, supra, a city employee sued the city and others alleging violations of federal and Georgia wiretapping statutes as well as a 42 U.S.C. § 1983 claim and state tort claims. Anderson worked at the city's call center where all calls were taped and could be and were at times listened to. Those included private conversations between the operators, which included Anderson.

The Court held that a municipality is not a person under the federal wiretapping statute. It reasoned that a municipality was not included under the definition of a person. The Court found that the addition of the word *entity* was intended to refer to the entities mentioned in the definition of *person* and not to expand the statute to include other defendants. Based on that, the Court granted summary judgment.

**F. The Plaintiffs cannot prove a violation of R.I.G.L. § 11-35-21.**

Count Four of the Complaint states:

**Count Four**

**(R.I. Gen. Laws § 11-35-21)**

> 121. The actions of the Defendants as alleged, including but not limited to installing, using, and maintaining the "Total Recall" system violates R.I. Gen. Laws § 11-35-21.
>
> 122. As a direct result of the Defendants violation of R.I. Gen. Laws § 11-35-21, Plaintiffs suffered personal injuries and other damages.

**WHEREFORE,** Plaintiffs seek that the Court issue the following relief in accordance with R.I. Gen. Laws § 9-1-2:

a. Award Plaintiffs their compensatory damages;

b. Award Plaintiffs their costs, including reasonable attorney's fees;

c. Award prejudgment interest and such further relief as this Court deems fair and just.

R.I.G.L. § 11-35-21 provides:

> **§ 11-35-21 Unauthorized interception, disclosure or use of wire, electronic, or oral communication. –** (a) Except as otherwise specifically provided in chapter 5.1 of title 12, any person: (1) who willfully intercepts, attempts to intercept, or procures any other person to intercept or attempt to intercept, any wire, electronic, or oral communication; (2) who willfully discloses or attempts to disclose to any person the contents of any wire, electronic, or oral communication, knowing, or having reason to know that the information was obtained through interception of a wire, electronic, or oral communication in violation of this section; or (3) who willfully uses or attempts to use the contents of any wire, electronic, or oral communication, knowing, or having reason to know, that the information was obtained through interception of a wire, electronic, or oral communication in violation of this section; shall be imprisoned for not more than five (5) years.
>
> (b) The provisions of subdivisions (a)(2) and (3) of this section shall not apply to the contents of any wire, electronic, or oral communication, or evidence derived from those contents, which has become common knowledge or public information.
>
> (c) It shall not be unlawful under this chapter for:
>
> (1) An operator of a switchboard, or an officer, agent, or employee of a communication common carrier, whose facilities are used in the transmission of a wire, electronic, or oral communication, to intercept, disclose, or use that communication in the normal course of his or her employment while engaged in any activity which is a necessary incident to the rendition of his or her service or to the protection of the rights or property of the carrier of the communication. No communication common carrier shall utilize service observing or random monitoring except for mechanical or service quality control checks;
>
> (2) A person acting under color of law to intercept a wire, electronic, or oral communication, where that person is a party to the

> communication, or where one of the parties to the communication has given prior consent to the interception; or
>
> (3) A person not acting under color of law to intercept a wire, electronic, or oral communication, where the person is a party to the communication, or one of the parties to the communication has given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in the violation of the constitution or laws of the United States or of any state or for the purpose of committing any other injurious act.

This is a criminal statute. The instant case is a civil case for damages. A criminal statute has no place in the Complaint or in this case. Moreover, as to the City of Providence, a municipality cannot have the requisite intent to commit a crime. Count Four can easily be disposed of.

Moreover, even if there were a civil remedy for the statute, the same arguments would apply as in Section C of the Memorandum.

**G. The plaintiffs cannot prove a violation of R.I.G.L. § 12-5-.1-1, et seq.**

Count Six of the Complaints states:

> **Count Six**
> **(R.I. Gen. Laws § 12-5.1-1 *et seq.)***
>
> 125. The actions of the Defendants as alleged, including, but not limited to installing, using, and maintaining the 'Total Recall' system violates R.I. Gen. Laws § 12-5.1-1 *et seq.*
>
> 126. As a direct result of the Defendants violation of R.I. Gen Laws § 12-5.1-1 *et seq.* Plaintiffs suffered personal injuries and other damages.
>
> WHEREFORE, Plaintiffs seek that the Court issue the following relief in accordance with R.I. Gen. Laws § 12-5.1-13:
>
> a. Award Plaintiffs their compensatory damages but not less than liquidated damages, computed at a rate of one hundred dollars ($100) per day for each day of

violation, or one thousand dollars ($1,000), whichever is higher.

b. Award Plaintiffs punitive damages;

c. Award Plaintiffs their costs, including reasonable attorney's fees;

d. Award prejudgment interest and such further relief as this Court deems fair and just

That is the only citation to the statute in the Complaints. The Municipal Defendants will assume that the Plaintiffs are alleging a violation of R.I.G.L. § 12-5.1-10 which provides.

> **§ 12-5.1-10 Disclosure and use of intercepted wire or oral communications. –** (a) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic, or oral communication, or evidence derived from them, may disclose the contents to another investigative or law enforcement officer to the extent that disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.
>
> (b) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic, or oral communication or evidence derived from them may use the contents to the extent that their use is appropriate to the proper performance of his or her official duties.
>
> (c) Any person who has received, by any means authorized by this chapter, any information concerning a wire, electronic, or oral communication, or evidence derived from them intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or the derivative evidence while giving testimony under oath or affirmation in any criminal proceeding in any court of the United States or of this or any other state or in any federal or state grand jury proceeding.

A civil remedy is provided for in R.I.G.L. § 12-5.1-13 which provides in pertinent part:

> **§ 12-5.1-13 Civil remedy. -** (a) Any person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses the communications, and shall be entitled to recover from that person.

R.I.G.L. § 12-5.1-10 deals with the disclosure of intercepted communications not interception of those calls. There is no evidence in this case that any of the Plaintiffs' calls were disclosed.

Assuming the Plaintiffs called the Public Safety Complex during the period of time the Total Recall System was in use and assuming they called a line which was part of the Total Recall System, there are no allegations in the Complaint that the contents of their calls were disclosed. Thus, there can be no violation of this statute.

R.I.G.L. § 12.5.1-13 does speak of interceptions in violation of the Chapter. However, it is not clear how an interception would be a violation in the civil context as the statute contemplates criminal investigations.

This statute appears to deal with applications for wiretaps in criminal investigations. That would involve listening to conversations. That is not what this case is about. This is not a case where conversations were being listened to, just recorded.

**H. The plaintiffs cannot prove a violation of R.I.G.L. § 9-1-28.1**

Count Five of the Complaint states:

> Count Five
> (R.I. Gen. Laws § 9-1-28.1 Right to Privacy)
>
> 63. The actions of the Defendants as alleged, including, but not limited to, installing, using, and maintaining

the "Total Recall" system is a deprivation of Plaintiffs' right to privacy in violation of R.I. Gen. Laws § 9-1-28.1

64. As a direct result of the violation of Plaintiffs' privacy rights as set forth in R.I. Gen. Laws § 9-1-28.1. Plaintiffs suffered personal injuries and other damages.

WHEREFORE, Plaintiffs seek that the Court issue the following relief pursuant to R.I. Gen. Laws § 9-1-28.1(b):

1. Enter a Declaration that the Defendants violated Plaintiffs' privacy rights as set forth in R.I. Gen. Laws § 9-1-28.1

2. Award Plaintiffs their compensatory damages;

3. Award Plaintiffs their costs, including reasonable attorney's fees pursuant to R.I. Gen. Laws § 9-1-28.1 (b) as prevailing party;

4. Award prejudgment interest and such further relief as this Court deems fair and just.

R.I. G. L. § 9-1-28.1 provides:

**§ 9-1-28.1 Right to privacy – Action for deprivation of right. –** *(a) Right to privacy created.* It is the policy of this state that every person in this state shall have a right to privacy which shall be defined to include any of the following rights individually:

(1) The right to be secure from unreasonable intrusion upon one's physical solitude or seclusion;

(i) In order to recover for violation of this right, it must be established that:

(A) It was an invasion of something that is entitled to be private or would be expected to be private;

(B) The invasion was or is offensive or objectionable to a reasonable man; although,

(ii) The person who discloses the information need not benefit from the disclosure.

(2) The right to be secure from an appropriation of one's name or likeness;

(i) In order to recover for violation of this right, it must be established that:

(A) The act was done without permission of the claimant;

(B) The act is of a benefit to someone other than the claimant;

(ii) It need not be established that there was any publication.

(3) The right to be secure from unreasonable publicity given to one's private life;

(i) In order to recover for violation of this right, it must be established that:

(A) There has been some publication of a private fact;

(B) The fact which has been made public must be one which would be offensive or objectionable to a reasonable man of ordinary sensibilities;

(ii) The fact which has been disclosed need not be of any benefit to the discloser of the fact.

(4) The right to be secure from publicity that reasonably places another in a false light before the public;

(i) In order to recover for violation of this right, it must be established that:

(A) There has been some publication of a false or fictitious fact which implies an association which does not exist;

(B) The association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances;

(ii) The fact which was disclosed need not be of any benefit to the discloser.

> *(b) Right of action.* Every person who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to a deprivation and/or violation of his or her right to privacy shall be liable to the party injured in an action at law, suit in equity, or any other appropriate proceedings for redress in either the superior court or district court of this state. The court having jurisdiction of an action brought pursuant to this section may award reasonable attorneys' fees and court costs to the prevailing party.

In order to state a claim for unreasonable intrusion, there must be an invasion of something that is entitled to be private or would be expected to be private. See Pontbriand v. Sundlun, 699 A.2d 856 (R.I. 1997), at 864.

There is no expectation of privacy of people who call in to the police and fire stations. Thus, there can be no intrusion.

The invasion must be offensive or objectionable to a reasonable man. Id.

Calling into police or fire stations and having the calls recorded would certainly not be offensive or objectionable to a reasonable man. These calls should and would be business calls for police and fire. Moreover, without the Defendants having acquired the information through any wrongful or improper means, there can be no liability. Id.

The Defendants' consistent position has been that the recording was legal. Thus, the recordings were not done through improper means.

Obviously, the right to be secure from an appropriation of one's name or likeness is inapplicable as there is no evidence any of the Plaintiffs' calls were ever listened to, never mind used for anything. Moreover, it should be noted that the Plaintiffs have not produced any evidence that they ever called the public safety complex.

Nor is the right to be secure from unreasonable publicity given to one's private life applicable here. The only people who have publicized the fact that the calls were

recorded are the Plaintiffs' themselves. The Municipal Defendants never publicized this fact until the day they ordered the system removed. Moreover, no one has ever publicized the names of the Plaintiffs.

Finally, Sec. 9-1-28.1 (4) does not apply to the instant case either. That is to say, the Municipal Defendants have not publicized the names of the Plaintiffs. The Court does not even have to get to whether or not the Plaintiffs have been placed in a false light since there has been no publication of who they are. Thus, this cause of action must fail, also.

**Conclusion**

The Complaints can be dismissed under Rule 12(b)(6) for the aforementioned reasons. The Court need not delve into the constitutional claims or the merits of the underlying statutory claims. The case can be dismissed short of a summary judgment analysis.

If the Court denies the motion to dismiss and undertakes the summary judgment analysis, then the result should be the same: judgment for the Defendants.

When the Court considers the undisputed facts, the statutes and caselaw, it should find that there are no genuine issues of material fact in this case and that the Defendants' are entitled to judgment as a matter of law.

Defendants,
By their Attorneys:

Joseph M. Fernandez,
City Solicitor

/s/ Kevin F. McHugh
Kevin F. McHugh (#3927)
Senior Assistant City Solicitor
City of Providence Department of Law
275 Westminster Street
Providence, Rhode Island 02903
(401) 421-7740 Ext. 333
(401) 351-7596 (fax)
kevin_mc1950@hotmail.com

Certificate of Service

I hereby certify that on this 14th day of September, 2006, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document was served by electronic mail upon:

Susan M. Carlin, Esq.
Stephen R. Famiglietti, Esq.
Famiglietti & Carlin, Ltd.
The Lincoln Center
132 Old River Road, Suite 205
Lincoln, RI 02865
Famcarltd@aol.com

Mark A. Fay, Esq.
Murphy & Fay, LLP
127 Dorrance Street, 2nd floor
Providence, RI 02903
mark@murphyandfay.com

Dean G. Robinson, Esq.
670 Willett Avenue
East Providence, RI 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esq.
Coia & Lepore, Ltd.

226 South Main Street
Providence, RI 02903
gsantopi@coilepore.com

and by regular mail, postage prepaid, to the following:

Carolyn Mannis, Esq.
170 Westminster Street, Suite 800
Providence, RI 02903

/s/ Kevin F. McHugh
Kevin F. McHugh