May 8, 2003

On February 14, 2003, members of the Rhode Island State Police Detective Bureau were requested to respond to the Providence Police Department/Providence Public Safety Complex in reference to a complaint of a digital recording system which was installed in the second-floor utility room, Room No. P284, which maintained computers and telephone interface equipment. At approximately 6:30 P.M., the following detectives were present: Lieutenant David Neill, Corporal Douglas Newberg, and Detectives John Killian and John Lemont. Present from the Providence Police Department was Consultant to the Chief, Andy Rosenzweig, Lieutenant Keith Tucker, and Detective John O'Hara. At this time, detectives were debriefed by Andy Rosenzweig and Lieutenant Keith Tucker as to the discovery and removal of a digital recording device which was recording incoming and outgoing telephone calls at the Providence Public Safety Complex.

At approximately 7:30 P.M., Inspector Bennett of the Providence Police Department Internal Affairs Unit provided access to the utility/telephone room. Detectives were able to view the location of the recording device. The system was already removed by Lieutenant Tucker and Communications Technicians Greg Haroian and Tony Desmarais on February 10, 2003. At this time, detectives only observed telephone lines, equipment brackets, and some power requirements from the removed recording system. Photographs were taken of this area by Detective John Killian.

Detectives seized from the office area of Lieutenant Tucker a digital recording system identified as Expanets Total Recall System which included a Dell 1650 Server, Serial No. 4SC5F11; a Dell 2500 Server, Serial No. 6J84C11; some documentation on the Total Recall System; an AT&T computer tower and associated peripheral devices.

[redacted]

Exhibit E

During the debriefing by Andy Rosenzweig, detectives were informed that the Director of the Communications Center, Manuel Vieira, and personnel from his office assisted with defining the system specifications, installation, access, and technical settings of the Total Recall System. Detectives further learned at that time the Total Recall System was digitally archiving all incoming and outgoing telephone calls except for a selected few from the Communications Center, Providence Public Safety Complex, to include the Providence Police Department and the Providence Fire Department; as well as some outlying buildings such as the Animal Control Center and the Fraternal Order of Police hall. Detectives also received from Andy Rosenzweig a list containing telephone extensions and the respective personnel assigned to that extension which were allegedly not being recorded.

At approximately 8:30 P.M., detectives responded to the Communications Center located at One Communication Place, West Exchange Street, Providence. Director Vieira's office was locked. At approximately 9:05 P.M., Director Vieira met detectives at the Communications Center but refused to discuss the recording system or any other questions regarding the recording of telephone calls at the Providence Public Safety Complex. At this time detectives seized the computer from Director Vieira's office, identified as a Dell PC Tower, Service Tag No. 1UDU9, and associated peripheral devices.

Detectives secured for the evening. Corporal Newberg and Detective Killian returned all seized evidence to State Police Headquarters and secured for the evening.

On February 15, 2003, at approximately 11:30 A.M., the following detectives returned to the Providence Public Safety Complex: Lieutenant David Neill; Corporals David Palmer and Douglas Newberg; and Detectives John Killian, John Lemont, and James Dougherty. Also present were: Andy Rosenzweig and Lieutenant Keith Tucker.

At this time detectives were further debriefed by Andy Rosenzweig and Lieutenant Keith Tucker as to the week's events leading up to Colonel Esserman's discovery and request to remove the digital recording device from the second-floor computer/telephone room.

At this time detectives start to interview the following Communications Center employees:

On February 15, 2003, Detective Corporal Newberg interviewed Mary Lennon at the Providence Public Safety Complex. Ms. Lennon provided the following information:

Ms. Lennon was the Chief of Operations, Police Control Center, at the Communications Center. She oversees approximately 44 personnel answering calls for service and dispatching calls for service for the police department. Ms. Lennon identified her immediate supervisor as Joseph Richardson, Deputy Director of the Communications Center. Ms. Lennon indicated she had some knowledge of the Total Recall System based on some training received and discussions with other personnel of the Communications Center, that most of the telephone lines were being recorded in the Providence Public Safety Complex. Ms. Lennon also indicated that Director Manuel Vieira and Deputy Director Joseph Richardson had knowledge that the telephone lines were being recorded at the Providence Public Safety building. Ms. Lennon indicated she had received remote training (via telephone) on the Total Recall System which included an overview of the system; its capabilities; and how to research, locate, and download pre-recorded telephone conversations. Ms. Lennon stated she recalls downloading one pre-recorded telephone conversation from the Total Recall System. This call involved a conversation between Councilman Patrick Butler and acting Director of the Emergency Management System, Thomas Scorpio in early November of 2002, at the request of Deputy Director Joseph Richardson. Ms. Lennon indicated that after locating the above-mentioned telephone conversation file, she briefly played the audio file and then downloaded a file to a CD-ROM. Ms. Lennon stated she then placed the CD-ROM in Director Vieira's office. Ms. Lennon

also stated that a short time later, Director Vieira indicated to her there was no audio file on the CD. She subsequently requested Greg Haroian, Communications Specialist Technician, to re-retrieve the file and write it to a CD-ROM.

Ms. Lennon indicated that to her knowledge the following personnel from the Communications Center had access to the Total Recall System: Ron Reposa, Steve Moise, Greg Haroian, Tony Desmarais, and Frank Parfume.

Ms. Lennon did indicate prior to the Providence Public Safety Building being constructed and operational, the only telephone lines at the Communications Center recorded were the police control lines, emergency lines, Channel 4, the back room lines (referring to some secondary lines), and all other telephone lines were not recorded.

Ms. Lennon stated she was provided a list of telephone numbers by Greg Haroian that were being recorded, but she was never trained or had knowledge on how to add or remove telephone numbers from the recording parameters.

Ms. Lennon was shown three request sheets for "logging tape playbacks" which she initialed and dated. Ms. Lennon indicated she completed the request forms but did not download to a CD-ROM, the requested pre-recorded telephone conversations which were requested by Major Simoneau and Investigator Thomas Clark. (Ms. Lennon did state she attempted to download the telephone conversation between Butler and Scorpio.) Ms. Lennon indicated that Ron Reposa and Greg Haroian executed the download request and that she only completed the request forms.

Ms. Lennon stated she did copy police calls for service and radio transmissions from the dictaphone system to cassette when requested through the requests sheets for "logging tape playback" forms. The dictaphone system records all police center emergency telephone lines, two telephone lines at the front dispatch, three telephone lines on Channel 4 (in back room), and

dispatch/cruiser radio Channels 1 through 6.

Ms. Lennon indicated her only reaction to the publicity of the recording device was that she assumed that most (all) of the people had knowledge that the telephone lines were being recorded.

On February 15, 2003, Detective Corporal Douglas Newberg and Detective John Killian interviewed Greg Haroian. Greg Haroian is employed at the Communications Center as a computer technician.

Mr. Haroian stated that in July or August of 2002, he became aware that all telephone lines were being recorded when he was asked to do maintenance from a server of the recording device. Mr. Haroian was asked by Deputy Director Joseph Richardson and Frank Parfume to install a sound card in the server which was located in the second-floor telephone room of the Providence Public Safety Complex. Mr. Haroian further stated he did not install a sound card because he could not locate a 64-pin audio card. A sound card, along with audio speakers, allows a system to have audio capability.

Mr. Haroian stated that he learned through online training to do some basic functions of the Total Recall System; more specifically to add and remove telephone extensions for the recording device. Mr. Haroian stated he was directed by either Director Vieira, Deputy Director Richardson, Mary Lennon, or Tony Desmarais to perform this function with the Total Recall System.

Greg Haroian mentioned that there were some issues with other personnel at the Communications Center about the recording of the recreational/break area telephone; and after numerous complaints, the recording of that extension was removed.

Mr. Haroian stated he had administrative privileges to the Total Recall System (which were provided by Deputy Director Richardson), along with Mary Lennon, Ron Reposa, Tony Desmarais, Frank Parfume, and Steve Moise. Mr. Haroian stated that it was approximately three to five times

that he was requested to retrieve audio files from recorded telephone conversations from the Total Recall System.

Mr. Haroian stated he specifically recalls removing the recording of telephone extensions from the director's area, deputy director's area, their receptionist, the task force area, the conference room telephone number, the director's home number, and the chief's home number (acting Chief Sullivan). Mr. Haroian further stated that Tony Desmarais had removed additional telephone numbers from being recorded but he had no specific information.

Mr. Haroian stated he searched for and downloaded a telephone call file for Chief Dutra of the Providence Fire Department at the direction of Tony Desmarais. Mr. Haroian further stated Chief Dutra brought his own CD-ROM and the request was made, and he then left with the file recorded to the CD-ROM.

Detective Killian seized from Mr. Haroian a Dell PC Tower computer, Serial No. 1U026, which was used by Deputy Director Richardson at his home. According to Mr. Haroian, the computer was returned to the Communications Department approximately two weeks prior to February 15, 2003.

On February 15, 2003, Detective Corporal David Palmer interviewed Stephen Moise. Mr. Moise is an inspector in the Department of Communications.

Mr. Moise stated he was trained on the Total Recall System sometime in June or July of 2002, and was assigned administrative privileges. Mr. Moise recalls an individual from Texas coming to the Providence Public Safety Complex for a brief training session. Mr. Moise indicated that other personnel of the Communications Center who had administrative privileges were: Mary Lennon, Anthony Desmarais, Greg Haroian, Ron Repose, and Frank Parfume.

Mr. Moise had knowledge that all of the telephone lines within the Providence Public Safety Complex and the Communications Department were recorded. Mr. Moise further indicated that

Director Vieira, Deputy Director Richardson, Mary Lennon, Frank Parfume, and Ron Reposa had knowledge that the telephone lines were being recorded.

Mr. Moise also stated former Chief Urbano Prignano, Majors Sullivan and Simoneau, and the "brass" of the Fire Department were aware that all the telephone lines were recorded. He based this knowledge of the Fire Department on their request to remove specific telephone numbers from being recorded.

Mr. Moise further indicated he observed a list of telephone numbers (approximately 16 to his recollection) presented to Tony Desmarais to be removed from the Total Recall System at the direction of Director Vieira.

Mr. Moise stated he specifically recalls two individuals complaining about their telephone lines being recorded. The two individuals were Cindy Parente, Administrative Assistant; and Fire Marshal David Costa.

Mr. Moise stated he never downloaded a telephone-recorded file from the Total Recall System; and if he needed anything from that system, he would contact Mary Lennon.

Mr. Moise recalls overhearing a conversation concerning Councilman Butler looking for information about a telephone conversation, but he had no further information.

Mr. Moise had knowledge of the location of the Total Recall System based on receiving training at that location as well as knowledge that information can be retrieved from the Total Recall System from Mary Lennon's computer.

On February 15, 2003, Detectives John Killian and James Dougherty interviewed Sergeant Dennis Lambert of the Providence Police Department. Sergeant Lambert is the Management Information System Director responsible for all computer equipment within the Providence Public Safety Complex. Sergeant Lambert stated he knew of the Total Recall System and the fact that this

system was recording all incoming and outgoing telephone calls from the Providence Public Safety Complex and Communications Center. Sergeant Lambert further stated he was not involved in the installation or setup of the Total Recall System, that this system was installed and set up by a representative from Expanets who also installed all the telephone installation and switching equipment. Sergeant Lambert stated this system was discussed at several meetings which pertained to telephone and computer equipment installation and the recording of the trunk lines at the Providence Public Safety Complex.

Sergeant Lambert stated that Tony Desmarais, Frank Parfume, and Ron Reposa from the Communications Center, as well as a representative from Expanets were always present at these meetings.

Sergeant Lambert stated to his knowledge no written notices or banners were placed on the system notifying users that the telephone system was being recorded.

Sergeant Lambert stated he contacted Andy Garza of Expanets to determine if the Total Recall System maintained a system log of users accessing it. This was requested by Chief Esserman after the chief was notified in early February of 2003, of a digital recording system recording all telephone lines at the Providence Public Safety Complex. Sergeant Lambert determined through Garza that the system did not have that capability. Also at the request of Chief Esserman, and with Greg Haroian present, Sgt. Lambert stated he accessed the Total Recall System and printed a list of users and their access privileges.

On February 15, 2003, Detective James Dougherty interviewed Frank Parfume, telephone technician with the Communications Center. Mr. Parfume has been employed with the City of Providence for the past sixteen (16) years. Mr. Parfume stated his primary responsibilities include changing telephones, adding extensions, and installing wiring for computer systems and telephones

in all City buildings. Mr. Parfume stated he learned from Anthony Desmarais and Bob Nelson that all the telephone trunk lines were to be recorded. Mr. Parfume further stated the information surrounding the recording of all telephone lines was discussed during the bidding process for the new Providence Public Safety Complex. Mr. Parfume also stated that Anthony Desmarais and Robert Nelson met occasionally to prepare the request for proposal for the telephone system but was uncertain if their discussion also included the recording device.

Mr. Parfume stated that Robert Nelson, presently a contractor for Expanets, had a long history of telephone service work for the City of Providence and that Robert Nelson would be handling all the installation and upgrading for the new telephone system throughout the Providence Public Safety Complex.

Mr. Parfume believed everything Robert Nelson and Anthony Desmarais undertook was at the direction of Director Vieira.

Mr. Parfume stated that at the direction of Manuel Vieira, every telephone extension in the Providence Public Safety Complex was to be recorded or have the ability to be recorded.

Mr. Parfume further stated that Deputy Director Joseph Richardson was also knowledgeable of the requirement directed by Manuel Vieira to record all telephone lines or have the capability to record all telephone lines, and that Deputy Director Richardson also wanted "station-to-station" recording capability; but it was cost prohibitive at the onset of the project.

Mr. Parfume stated that after Robert Nelson and Expanets won the contract, two individuals, identified only as Al and Larry, set up the Total Recall System.

Mr. Parfume stated that it was "no secret" that the telephone lines were recorded. Mr. Parfume stated that Steve Moise and himself received approximately twenty (20) minutes of training and then were issued passwords from an Expanets employee in Texas.

Mr. Parfume stated his user name was "FRANKP" and his password was "PHONE."

Mr. Parfume stated that Steve Moise, Anthony Desmarais, Ron Reposa, and Mary Lennon also had log-on credentials with the Total Recall System.

Mr. Parfume stated on one occasion Manuel Vieira requested him to inquire into a long-distance telephone call due to an outrageous telephone charge. Mr. Parfume recalls accessing the Total Recall System at the site of the server and determined that the telephone line in question was a computer line.

Mr. Parfume stated there was no sound card in the Total Recall System server and that one could not be purchased; therefore, no telephone calls could be replayed from the Total Recall System itself. A sound card, along with audio speakers, allows a system to have audio capability.

Mr. Parfume stated Greg Haroian took responsibility for the Total Recall System, and they attempted to purchase a sound card at which time they learned a sound card was not available.

Mr. Parfume recalled a conversation with Lieutenant David Lapatin of the Providence Police Department concerning the recording of telephone lines. Lieutenant Lapatin had requested two (2) additional telephone lines installed within an office of the Providence Police Department and indicated that the two telephone lines not be recorded. Mr. Parfume stated that the two lines were eventually recorded.

Mr. Parfume further stated Director Vieira instructed him to remove certain telephone extensions from being recorded. Mr. Parfume recalls removing the director's extension and the director's home extension, as well as additional telephone extensions being removed. Mr. Parfume also stated within the last month, a number of telephone extensions were removed consisting entirely of Fire Department extensions.

Corporal Newberg reviewed a memo drafted by Frank Parfume to Colonel Esserman in which

Parfume states he was issued a password for the Total Recall System but never accessed the system other than to verify his password. This memo was drafted on February 10, 2003, and notarized by Veronica D'Antuono.

On February 15, 2003, Lieutenant David Neill and Detective John Lemont interviewed Anthony Desmarais. Mr. Desmarais is a radio engineer for the City of Providence and has been employed by the City of Providence for the past thirty-two (32) years, and has been in his present position as radio engineer for six (6) years.

Mr. Desmarais stated he has had a longstanding relationship with Robert Nelson, a private contractor who has done extensive work for the City of Providence.

Mr. Desmarais stated he was directed by Director Manuel Vieira to prepare a 'Request for Proposal' on everything to do with the telephone system and recording system for the Providence Public Safety Complex.

Mr. Desmarais further stated he had no familiarity with the bidding process so he sought the assistance of Robert Nelson to assist in writing a draft for the 'Request for Proposal.' Mr. Desmarais stated he met Robert Nelson on several occasions to explain and eventually turn over the final version of the 'Request for Proposal.' Mr. Desmarais stated the final version of the 'Request for Proposal' was provided to Director Manuel Vieira.

Mr. Desmarais further stated that Director Vieira specified that every telephone line was to be recorded and predicted approximately five hundred (500) telephone-line capability would be sufficient. Mr. Desmarais stated that initially there were two (2) specifications submitted to him: One specification written by Robert Nelson and the second specification outlining the recording device. Mr. Desmarais could not recall who drafted the recording device specification. Mr. Desmarais then stated the two (2) specifications were combined into one (1) 'Request for Proposal.'

Mr. Desmarais stated that Director Vieira favored Robert Nelson to win the bid because of a longstanding relationship with the City and the director's trust in his abilities. Mr. Desmarais stated four (4) individuals were hired through Robert Nelson to do the telephone and recording device installation. Mr. Desmarais recalls two (2) of the names being Larry and Al who installed the hardware, and a Susan who installed the software. Mr. Desmarais also stated that a Tom Ngo from Texas worked on the Total Recall System.

Mr. Desmarais stated he was to receive training on the Total Recall System but missed the training; therefore, Greg Haroian provided him some introductory training on access to the computer and assigned him a user name and password. Mr. Desmarais stated that his user name was "TONY" and his password was "TONY00."

Mr. Desmarais admitted to logging into the system on several occasions to verify that the switch was working properly. Mr. Desmarais stated he used a computer located in the computer room in the Telecommunications Center. Mr. Desmarais stated he was taught by Greg Haroian on how to access the system. He has also observed Greg Haroian access the recording system, then access a pre-recorded ".WAV" file, and play the audio on several occasions. Mr. Desmarais recalled two (2) occasions where requests were made to access recorded telephone calls. The first request was to look into a bomb threat being called in, and the second request was from Chief Dutra of the Fire Department. Mr. Desmarais first checked with Director Vieira prior to requesting Greg Haroian to record the files to a CD-ROM to provide to Chief Dutra. Mr. Desmarais stated he never listened to the requested recorded telephone conversations.

Mr. Desmarais stated he was provided a list of telephone extensions to be removed from recording. To Mr. Desmarais's recollection, the telephone numbers were listed to Director Vieira's two telephones, Deputy Director Richardson's two telephones, the Task Force telephones located at

the Dunkin' Donuts Center, the Telecommunications Center conference room and lunch room, Director Vieira's secretary Cindy Parente's telephone, acting Chief Sullivan's office and home extension, as well as extensions belonging to the Fire Department.

Mr. Desmarais recalls a conversation with technician Frank Mills who had concerns over the legality of recording telephone conversations without consent. Mr. Desmarais indicated he never mentioned this conversation with Frank Mills to Director Vieira.

Mr. Desmarais also stated he had some conversations with Chief Rattigan and Chief Lanzi about removing the recording of telephone extensions within the Fire Department. Mr. Desmarais had complied with their request as mentioned above.

Mr. Desmarais stated he had recent conversations with Director Vieira and Deputy Director Richardson concerning the recording of station-to-station telephone extensions. After some discussion, Mr. Desmarais stated Director Vieira agreed to upgrading the equipment to record twenty-five (25) to thirty (30) station-to-station extensions and that Robert Nelson would order the appropriate equipment to complete this request. Mr. Desmarais stated he had no knowledge of what telephone extensions would have station-to-station recording capability. That would be determined by Director Vieira.

Corporal Newberg reviewed a memo drafted by Anthony Desmarais to Colonel Esserman in which Desmarais states he was issued a password for the Total Recall System and used this access ten (10) times to verify the system was operational. This memo was drafted on February 10, 2003, and notarized by Veronica D'Antuono.

Anthony Desmarais provided several documents to detectives that pertained to the Total Recall System. The first is a document authored by Robert Nelson to Director Vieira, Ron Reposa, and Anthony Desmarais dated December 9, 2002, and contained the following:

- Discussion of upgrading Total Recall to include station-to-station recording
- The installation of a sound card
- Discussion of activating call accounting as soon as a computer is designated for use by the City of Providence and that Anthony Desmarais has been provided the system specifications
- Additional training on the Total Recall System
- Discussion of an up-to-date listing of the data base for the Total Recall System for the Police, Fire, and Communications Bureau

The second document authored by Ronald Reposa to Director Vieira dated November 21, 2002, contained the following:

- Status of the Total Recall and Dictaphone projects--to include, station-to-station recording capability
- Status of sound cards for Total Recall
- Unavailability of call accounting due to lack of computer
- Discussion of recording and monitoring activities in the EOC
- Additional issues discussed in memo

The third document consists of three pages of order summaries for Expanets station-to-station recording hardware requirements.

On June 17, 2003 Corporal Newberg re-interviewed Anthony Desmarais. Mr. Desmarais emphasized throughout the interview that Manny Vieira directed everything he did relative to the Total Recall System and the recording of telephone extensions. Mr. Desmarais further stated he did not do anything relative to the recording device without Director Vieira's permission and/or knowledge.

On February 18, 2003, Detective Sergeant Brian Casilli and Detective John Killian, along with Lieutenant Keith Tucker of the Providence Police Department, interviewed Joseph Richardson, Deputy Director of the Department of Communications. Mr. Richardson stated the following:

Mr. Richardson indicated that since September 28, 2001, he was assigned to the Public Security Task Force located at the Dunkin' Donuts Center along with Major Martin Hames of the Providence Police Department and Chief Giannini of the Providence Fire Department. Mr. Richardson continued to maintain the Deputy Director of the Department of Communications position as well. Mr. Richardson indicated that as the deputy director, he was responsible for the operations of the Communications Center, to include police and fire responsibilities, as well as fire alarm inspections.

Mr. Richardson stated he never specifically attended any meeting or discussion on the recording of any or all telephone lines. He did, however, recall discussions with Director Vieira, Major Sullivan, and Major Simoneau about numerous complaints concerning the police not responding to calls for service and the necessity to record certain telephone lines.

Mr. Richardson further indicated he had general conversations about the recording device with Director Vieira asking if the Department obtained a recording device, is it operable, and does it have the capabilities to record the switchboard. Mr. Richardson indicated he only observed the Total Recall System twice. One time, in approximately September or October of 2002, he observed the Total Recall System and he stated he wasn't sure if the system was working. The second time was when the system was removed by Colonel Esserman. Mr. Richardson further indicated that he only thought the switchboard and the central station lines (clerks) were being recorded until inquiries were made by the Fire Department around December of 2002. It was at this time that he learned from Director Vieira that all telephone lines were recorded. He also learned from Director Vieira that this was at the direction of the Police Department and more specifically referred to the names of Colonel Prignano, Major Simoneau, and Major Sullivan.

Mr. Richardson stated that once he learned of the telephone lines being recorded, he initiated,

through Tony Desmarais, to have certain telephone lines removed from the recording list; and further, he may have initiated Channel 4 lines (tow lines) to be recorded. But prior to initiating any changes, he would first check with Director Vieira.

Mr. Richardson indicated he had knowledge of three (3) telephone conversations which were requested to be downloaded from the recording system. Mr. Richardson indicates the three (3) were: A request by Major Simoneau concerning a tow; the incident involving a man in the water and the response by the Fire Department; and the request by Councilman Butler.

Mr. Richardson stated that he had a meeting which included John D'Amico, Senior City Solicitor, Chiefs Lanzi and Giannini, and himself to discuss the recordings of all telephone lines. Based on this meeting, another meeting was to be scheduled with Chief Lanzi, Major Sullivan, Colonel Esserman, and others.

Mr. Richardson did state that during a conversation with Director Vieira, that he (Vieira) mentioned responsibility for the Total Recall System and that he wanted an accounting of the telephone lines and their use.

Detective Killian seized from Deputy Richardson a Dell Desktop Computer, Serial No. 1UOY4, from Mr. Richardson's office at the Dunkin' Donuts Center Terrorism Task Force office.

On February 18, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Lieutenant David Lapatin of the Providence Police Department. Lieutenant Lapatin stated that on February 14, 2003, he authored a memo to Andrew Rosenzweig outlining concerns/suspicions he had since he had heard that the telephone lines were being recorded in the Providence Public Safety Complex. Lieutenant Lapatin stated he approached acting Colonel Sullivan sometime in late July or early August 2002, with those concerns. Lieutenant Lapatin further stated acting Colonel Sullivan acknowledged that he knew the telephone lines were being recorded and basically disregarded any

further comment/concern of Lieutenant Lapatin. Lieutenant Lapatin indicated he terminated any further conversation with acting Colonel Sullivan and never discussed the subject again. Lieutenant Lapatin stated that he was attempting to discuss the legalities of this action with Colonel Sullivan.

Lieutenant Lapatin recalled a situation where he was tasked to set up an area in the Providence Public Safety Complex where a sensitive investigation was to be organized, and he needed two (2) telephone lines installed. At the time, two telephone technicians of the Communications Center did install these telephone lines; and he relayed information not to have these two lines recorded. Based on Lt. Lapatin's concern, he received a call from Director Vieira a short time later. Lieutenant Lapatin stated Director Vieira gave the impression that only central station telephone lines were recorded and that other telephone lines were not recorded.

Lieutenant Lapatin further stated the two telephone technicians confirmed his suspicion and indicated to him the telephone lines were recorded. Lieutenant Lapatin stated he was never notified through any method that the telephone lines were recorded.

On February 18, 2003, Corporal Steven Lefebvre and Detective David Doucet interviewed Joseph Migliaccio. Mr. Migliaccio is a video technician working at the Communications Center.

Mr. Migliaccio stated he first learned of a system being installed that had the capabilities of recording telephone lines but did not recall the system being identified as Total Recall. Mr. Migliaccio stated it was in April or May 2002, that he first heard of the new system from Tony Desmarais. Mr. Migliaccio stated Tony Desmarais discussed the system that they will eventually need to learn about. Mr. Migliaccio stated he eventually would need to learn how to add stations and delete stations from the Total Recall System. Mr. Migliaccio stated on several occasions, after being taught by Tony Desmarais, he would log into the system with either Tony Desmarais's log-in identification and password or Frank Parfume's log-in identification and password.

Mr. Migliaccio stated he logged into the system approximately ten to twelve times and always with the log-in identification and password of either Tony Desmarais or Frank Parfume, and this was always done at the Providence Public Safety Complex.

On February 18, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Sergeant Michael Vieira of the Providence Police Department. Sergeant Vieira stated he has been employed as a police officer for the past 15 years and presently works in the office of the Chief, primarily as a grant writer. He also has other administrative duties. Sergeant Vieira is the brother of Manuel Vieira, Director of Communications.

Sergeant Vieira stated he was involved in organizing the transition from the old Providence police station to the new public safety complex along with Inspector Robert Bennett. Sergeant Vieira further stated his responsibilities included the placement of personnel, the assignment of telephone extensions, and the actual move.

Sergeant Vieira further stated he attended meetings with representatives of Expanets, Robert Nelson, Susan Rennie, and members of the Communications Department, and other individuals he could not specifically recall. Sergeant Vieira stated that based on attending these meetings, he became aware that all telephone lines were to be recorded and had knowledge of the location of the system.

On February 19, 2003, Detective Corporal Steven Lefebvre and Detective David Doucet interviewed Patrick Butler. Patrick Butler is a councilman in Ward 5 in the City of Providence. Mr. Butler, on or about November 8, 2002, had a telephone conversation with Thomas Scorpio of the Emergency Management Office where he felt he was threatened by Scorpio. Mr. Butler stated he dialed the main telephone number to the Providence Police Department, 272-3121, and was forwarded to the Emergency Management Office. During this conversation Mr. Butler felt threatened

by Thomas Scorpio so he looked into whether or not the telephone call was recorded. Mr. Butler eventually spoke with Deputy Director Richardson who, at the time of their conversation, stated he wasn't sure if the telephone call was recorded. Mr. Butler stated a short time later Deputy Director Richardson re-contacted him and advised him the telephone call was recorded and he could come to the Communications Center and listen to it. Mr. Butler stated he met with Mary Lennon, completed a request for logging tape playback form, and then listened to his conversation with Thomas Scorpio which was already downloaded and ready to open from the computer. Mr. Butler determined, based on the telephone conversation, that he was not threatened. Mr. Butler stated that no copy of the file was made and the matter was dropped at that time.

Corporal Newberg received a signed consent form from Patrick Butler allowing investigators to listen to the recorded telephone conversation between himself and Thomas Scorpio.

Detective Killian located the recorded audio file, filename "11082002161413003.WAV" on the imaged copy of the Dell Computer. Corporal Newberg then briefly listened to the audio file and verified a conversation between Patrick Butler and Thomas Scorpio.

On February 19, 2003, Detective Corporal Steven Lefebvre and Detective David Doucet interviewed Sandra Manning, a clerk in the Vehicle Recovery Office of the Providence Police Department.

Ms. Manning stated she has been a clerk in the Vehicle Recovery Unit for approximately nine years. Ms. Manning further indicated she had an argument over the telephone with Anthony Vescera, Fiscal Administrator, concerning overtime money not received and that Vescera later went to Colonel Guido Laorenza with a complaint. Ms. Manning indicated this argument occurred in early November 2002. Ms. Manning then stated she was summoned into Colonel Laorenza's office concerning the telephone confrontation with Vescera. Ms. Manning stated that at this time then

Colonel Laorenza indicated a tape of the conversation was made. Ms. Manning indicated that she challenged the taping of telephone conversations with then Colonel Laorenza and indicated that it cannot be done. Ms. Manning stated shortly thereafter, then Colonel Laorenza called her back and indicated that Vescera was not pursuing a complaint and nothing further was done. Ms. Manning stated there was never a tape shown or played back for her to hear.

Ms. Manning stated that on February 14, 2003, after it was publicly revealed that a recording device was capturing telephone conversations within the Providence Public Safety Complex, Major Laorenza asked her (about her lawsuit over the recording of telephone conversations referring to the alleged tape Vescera had). Major Laorenza further stated the disks are erased every 30 days and then their conversation ended.

The only significance of this conversation between Sandra Manning and then Colonel Laorenza was the alleged comment made that a tape of the conversation existed. In speaking with Major Laorenza and Anthony Vescera, they both denied possessing a tape; however, Major Laorenza did indicate he may have made a comment that a tape existed without ever basing this comment on any knowledge.

On February 19, 2003, Corporal Steven Lefebvre and Detective David Doucet seized the following computers from the Communications Center with the assistance of Greg Haroian: 1) Dell Optiplex Computer, Serial No. 290NE; 2) Dell Optiplex Computer, Serial No. 7N4LD11. Both computers were taken to State Police Headquarters and turned over to Detective Killian.

On February 20, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Inspector Robert Bennett of the Providence Police Department Internal Affairs Unit. Inspector Bennett stated he was involved in the transition between the old Providence police station and the new Providence Public Safety Complex. His involvement included sharing the responsibilities of the

Providence Police Department during the construction phase and the moving phase which included occasionally attending meetings.

Inspector Bennett stated he had heard rumors that the telephone system was being recorded both in the old station and at the Providence Public Safety Complex. He further heard that the system had the capability of recording all telephone lines, but he had no direct knowledge that a system was designed and installed to record all telephone lines.

Inspector Bennett stated he attended at least one meeting concerning the telephone system which was attended by Susan Rennie of Expanets and possibly other Expanets employees, Gary Masono from Gilbane, Sergeant Michael Vieira, and possibly Tony Desmarais from the Communications Center. Inspector Bennett stated that no mention was ever made at any meeting he was present for, that the telephone system was to be recorded.

On February 20, 2003, Corporal Douglas Newberg seized from Lt. Tucker a laptop computer which was City of Providence property and used by Deputy Director Richardson in his City-issued vehicle. The computer is identified as a Panasonic CF-25 laptop computer, Serial No. CF25LGC4EAM8AKSA01366.

On February 20, 2003, Corporal Steven Lefebvre and Detective David Doucet interviewed Ronald Reposa, Fire Alarm Technician and Inspector at the Communications Department. Mr. Reposa stated he's been employed by the Communications Department for approximately 15 years and has had some responsibilities with the computer system in the Communications Center.

Mr. Reposa stated that several weeks prior to the Providence Public Safety Complex opening, he became aware the telephone lines were to be recorded. He observed Total Recall personnel configuring the system within the telephone room. Mr. Reposa was also aware of the capability to access and download files to CD-ROM's from a computer located at the Communications Center.

Mr. Reposa further stated he was instructed by either Tony Desmarais or Director Manuel Vieira to become familiar with the Total Recall System; and based on that request, he did some remote training with Andy Garza. Mr. Reposa stated the training consisted of learning basic functionality of the system, such as logging in, adding and deleting telephone lines, and sampling rate information.

Mr. Reposa identified his user name and password as "RON" and "CARE" respectively. Mr. Reposa also stated he may have accessed the system 30 to 40 times using his access name and password to verify the system was functioning or to add/delete telephone extensions. Mr. Reposa stated he probably added or deleted telephone extensions on two occasions at the direction of Director Vieira or Tony Desmarais and probably only accessed and recorded one telephone conversation to a CD-ROM.

On February 20, 2003, Corporal Steven Lefebvre and Detective David Doucet seized one (1) Dell laptop computer, Service Tag No. J549201, from Inspector Trinque, acting Director of the Communications Bureau. The seized laptop computer was previously used by Director Vieira.

On February 20, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Major Dennis Simoneau of the Providence Police Department. Major Simoneau stated he is the Commander of the Uniform Division and has been employed as a Providence police officer for the past 27 years.

Major Simoneau stated he was involved in planning the transition from the old Providence police station to the new Providence Public Safety Complex and that he attended hundreds of meetings leading up to the move. Major Simoneau further stated that during several of these meetings, of which he was in attendance, there were discussions of the telephone system and its capabilities including recording telephone conversations. Major Simoneau stated he clearly

understood the recording capability but was never directly told that the system had been installed and was recording all telephone lines. Major Simoneau further stated that based on the above knowledge, he sent a department-wide (global) e-mail to all sworn Police personnel and Communication personnel listing three to four items of concern with the transition to the new complex. Major Simoneau produced a copy of his original e-mail, sent July 22, 2002, which stated the following: "Know that all telephone lines in the new station are recorded and thus speak professionally at all times. Desk sergeants please alert all of your clerks of this fact."

Major Simoneau stated he had not recalled this specific e-mail until he was reminded of it by a sergeant, the name of whom he cannot recall. Major Simoneau spent several days sorting through all the 2002 e-mails he authored until he located this specific one.

Major Simoneau stated it was at one of many meetings he attended where discussion of the recording capability occurred and that discussion, according to Major Simoneau, could have been initiated by Director Vieira.

Major Simoneau further stated he had no access to the Total Recall System and when necessary, used the same protocol used to access Dictaphone records. Major Simoneau stated that protocol would be to contact Mary Lennon in Communications; Mary Lennon would then research the request and provide a copy, via tape or CD-ROM, if it existed.

Major Simoneau discussed a specific request made to Mary Lennon concerning a citizen complaint of a patrolman who had treated a caller rudely and unprofessionaly. Major Simoneau stated he advised Sergeant Gregory to look into the complaint and then requested from Mary Lennon the specific telephone call. Major Simoneau stated that several days later, a copy of the telephone conversation was downloaded to a CD-ROM and provided to him. Major Simoneau stated he listened to the CD-ROM to verify the complainant's allegations. Major Simoneau stated he then

provided the CD-ROM to Sergeant Gregory.

Major Simoneau also stated that when he was questioned by Colonel Esserman, he retrieved the CD-ROM from Sergeant Gregory and turned it over to Andy Rosenzweig.

Corporal Newberg seized the CD-ROM from Lt. Tucker on February 26, 2003.

On February 20, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Major Guido Laorenza. Major Laorenza stated he was promoted to acting Chief in October of 2002, for approximately three months and one week before returning to the rank of Major. Major Laorenza stated he had no knowledge of the telephone lines being recorded prior to a Command Staff meeting hosted by Colonel Esserman. Major Laorenza did state he had heard rumors within the Providence Police Department that telephone lines were recorded but refused to elaborate. Major Laorenza had no further information.

On February 20, 2002, Corporal Steven Lefebvre and Detective David Doucet interviewed Cynthia Parente, Administrative Assistant to the Director of Communications, Manuel Vieira.

Ms. Parente stated she had knowledge from Director Vieira that the telephone lines at the Communications Center were going to be recorded; and more specifically, Director Vieira made the comment that everything was going to be on a recording system. Ms. Parente stated Director Vieira made this comment a few months prior to the opening of the Providence Public Safety Complex.

Ms. Parente stated eventually, due to complaints, Director Vieira was to remove the recording of some telephone extensions at the Communications Center.

Ms. Parente further stated she had no knowledge of the system's location, she never had any training with the system, nor did she ever have any access privileges to the system.

On February 24, 2003, Detectives John Lemont and Gerald McKinney, along with Detective Al Lima of the Providence Police Department, interviewed Providence Fire Chiefs Rattigan and Lanzi.

Chief Rattigan stated he became knowledgeable of the telephone lines being recorded after a Providence Journal article appeared about an automobile accident in December of 2002. The Providence Journal article about the accident concerned a male operator driving into the Providence River and drowning. Chief Rattigan stated he recalls reporter Amanda Milkovits requesting telephone tapes regarding this particular accident.

Chief Rattigan stated he assigned Chief Giannini and Deputy Joseph Richardson of the Communications Center to investigate the recorded telephone lines.

Chief Rattigan stated he received a correspondence dated January 22, 2003, from City Solicitor D'Amico concerning all telephone lines being recorded.

Chief Rattigan stated he had no knowledge prior to D'Amico's correspondence that all the telephone lines were recorded and assumed that only emergency telephone lines were being recorded in the Providence Public Safety Complex.

Chief Rattigan further stated shortly thereafter, Anthony Desmarais contacted him regarding the recording of telephone lines. Chief Rattigan stated that after conversing with Anthony Desmarais, he assigned Chief Lanzi to look into the recording of all the telephone lines. Chief Rattigan stated that Chief Lanzi requested, through Anthony Desmarais, to remove all the Command Staff telephone extensions from being recorded.

Chief Lanzi stated that after learning of the recording of all the telephone lines, he requested to have all the Command Staff telephone extensions removed from recording and provided all the necessary extension numbers to Anthony Desmarais. Chief Lanzi further stated that a meeting was to be convened with the City Solicitor regarding the recording of telephone lines, but the meeting never took place due to the fact the recording system became public knowledge and an investigation was initiated.

On February 24, 2003, Corporal Douglas Newberg interviewed Monica D'Antuono, Administrative Assistant for retired Commissioner of Public Safety, John Partington. Ms. D'Antuono stated she attended approximately twelve (12) meetings on the planning/construction of the Providence Public Safety Complex. Ms. D'Antuono further stated she does not recall any mention of telephone lines being recorded at any of these meetings. Ms. D'Antuono stated that she did become aware, but does not recall how or when, that all the telephone lines were being recorded at the Providence Public Safety Complex. Ms. D'Antuono indicated she was never formally notified of the recordings of telephone lines through either a memo, general order, or e-mail. Ms. D'Antuono stated she discussed the recordings with Commissioner Partington who had no reaction at all, neither a denial or a confirmation that the telephone lines were being recorded.

Ms. D'Antuono stated she kept informal minutes and attendance records of the meetings she attended. Ms. D'Antuono, along with Lieutenant Keith Tucker, Lieutenant David Neill, Corporal Douglas Newberg, and Anthony Vescera, could not locate the records within the storage areas of the Providence Public Safety Complex.

Ms. D'Antuono stated that Mayor Cianci was never present at any of the earlier meetings, but that then-Chief Prignano may have attended along with acting Chief Sullivan (after Chief Prignano retired), Director Vieira, Deputy Director Richardson, and others.

On February 25, 2003, Lieutenant David Neill interviewed Susan Rennie, System Consultant for Expanets. Ms. Rennie stated she is a system consultant for Expanets and works in conjunction with Robert Nelson. Ms. Rennie stated both Robert Nelson and herself work for Expanets, which is located at One Thurber Boulevard in Smithfield. Ms. Rennie stated that the Request for Proposal was approved and purchased by the City of Providence, and she acted as a company consultant dealing directly with Anthony Desmarais and Frank Parfume. Ms. Rennie stated that the phone

system's features included voicemail, call accounting, and the Total Recall System. Ms. Rennie stated she had numerous conversations with Anthony Desmarais and Frank Parfume regarding the capabilities of the Total Recall System. Ms. Rennie stated she also worked directly with Inspector Robert Bennett, Sergeant Michael Vieira of the Providence Police Department and Mr. Costa from the Fire Marshals Office, but their conversations pertained only to the phone extensions and locations and not with the Total Recall System.

Ms. Rennie stated that the Total Recall System was installed by Expanets employees Larry Taylor and Al Forand. Ms. Rennie further stated after the system was installed, Andrew Garza configured the system and provided training to Frank Parfume. To Ms. Rennie's recollection the training occurred in early July 2002. Ms. Rennie stated that Andrew Garza later trained Greg Haroian via the telephone.

Ms. Rennie stated that Anthony Desmarais would contact Robert Nelson, who would then contact herself whenever the Total Recall System crashed. Ms. Rennie further stated she would then contact Andrew Garza who would correct the problem by dialing into the system remotely from Texas or by contacting Greg Haroian.

Ms. Rennie stated that all telephone extensions from 243-6000 to 243-6399 were believed to be recorded by the Total Recall System, and she further believed that there were also several two-thousand (2000) numbers on the system being recorded.

Ms. Rennie stated that the following locations had extensions believed to be recorded by the Total Recall System: The Providence Public Safety Complex, to include the Police and Fire Departments, all fire stations, the Police Academy, the Communications Center, Roger Williams Park, the Animal Control Center, 100 Dupont Street, and 300 Washington Street.

Ms. Rennie provided documentation showing the list of extensions to be recorded by the Total

Recall System. Ms. Rennie further stated she recalls sending an e-mail to Greg Haroian with an attachment of telephone extensions. Ms. Rennie also stated that she requested Greg Haroian to advise her which extensions would not be recorded. Ms. Rennie stated she recalled Anthony Desmarais contacting her later on, stating that they would remove or add extensions from the Total Recall System.

Ms. Rennie stated she recalled a situation on or about September 6, 2002, where a threat was made via the telephone towards acting Mayor Lombardi. It was learned at this time that this particular telephone extension was not recorded; and according to Anthony Desmarais, Director Vieira was upset and wanted this problem corrected. Ms. Rennie could not recall the extension number.

Ms. Rennie added that she has never accessed the Total Recall System and does not have an access code. Ms. Rennie further stated that she does not correct any technical problems with the Total Recall System and that Andrew Garza is responsible for maintaining the system and handling all technical problems.

On February 26, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Patrolman Richard Lonergan of the Providence Police Department. Patrolman Lonergan stated he has been with the Providence Police for approximately 22 years and presently works in the Vehicle Recovery Unit.

Patrolman Lonergan stated he was aware that all the telephone lines were recorded. He also stated in the summer of 2002, he had a conversation with Tony Desmarais from Communications who stated that all the telephone lines in the Providence Public Safety Complex will be recorded. Patrolman Lonergan stated he does not recall telling others about the telephones. Patrolman Lonergan further stated he doesn't recall receiving an e-mail from Major Simoneau regarding the

recording of telephone lines.

Patrolman Lonergan stated in December of 2002, he had a telephone conversation with a citizen of the Olneyville area of Providence and based on that telephone conversation, a complaint was filed against him. Patrolman Lonergan stated the complaint escalated to the point where Major Simoneau obtained a copy of the telephone conversation between him and the citizen from Olneyville. This copy of the telephone conversation was played for Sergeant Gregory, Patrolman Lonergan's immediate supervisor. Patrolman Lonergan never listened to the recorded telephone conversation.

Corporal Newberg received a signed consent form from Patrolman Lonergan allowing investigators to listen to the recorded telephone conversation between himself and the civilian complainant. Corporal Newberg then briefly listened to the audio file located on the CD-ROM and verifed a conversation between Patrolman Lonergan and another male.

On February 26, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Investigator Thomas Clark of the Providence Police Department Internal Affairs Unit. Investigator Clark had requested on November 5, 2002, a telephone conversation left on his voicemail to be recalled from the Total Recall System and written to a CD-ROM for playback. The requested message was left on Investigator Clark's voicemail and subsequently lost before Investigator Clark's request to retrieve it was received. Investigator Clark stated at the time of the request he did not know for sure if the telephone messages could be retrieved, and he did not have knowledge that all telephone conversations were being recorded through the Total Recall System at the Providence Public Safety Complex. Investigator Clark stated he contacted Mary Lennon for the request from his extension, 6153, and further provided a date and approximate time. Investigator Clark stated shortly

thereafter he received a CD-ROM with the telephone message.

Corporal Newberg seized the CD-ROM from Lieutenant Tucker on February 26, 2003.

Corporal Newberg received a signed consent form from Detective Clark allowing investigators to listen to the recorded telephone message. Corporal Newberg then briefly listened to the audio file located on the CD-ROM and verifed a telephone message was recorded.

On February 26, 2003, Lieutenant David Neill and Corporal Douglas Newberg, along with Lieutenant Keith Tucker of the Providence Police Department, interviewed Sergeant Thomas Gregory of the Providence Police. Sergeant Gregory indicated the following:

Sergeant Gregory is a supervisor with the Vehicle Recovery Unit with 24 1/2 years of service. Sergeant Gregory stated in early December 2002, Major Simoneau instructed him to contact Mary Lennon of the Communications Center and retrieve a telephone conversation between Patrolman Richard Lonergan of the Providence Police and Abe Hernandez, a private citizen. Major Simoneau indicated to Sergeant Gregory this was in reference to a complaint filed against Patrolman Lonergan for discourteous behavior during a telephone conversation. Sergeant Gregory stated he had no knowledge prior to the complaint that all telephone conversations were recorded. Sergeant Gregory further stated he contacted Mary Lennon with the request and eventually, in the presence of Major Simoneau, listened to the telephone conversation between Patrolman Lonergan and Abe Hernandez. Major Simoneau then gave the CD-ROM to Sergeant Gregory. Sergeant Gregory indicated he filed the CD-ROM until several weeks ago when Major Simoneau requested the CD-ROM be returned to him. Sergeant Gregory also stated he never received any training, e-mails, or inter-office notification prior to the relocation to the Providence Public Safety Complex that the telephone lines were being recorded.

On February 26, 2003, Lieutenant David Neill and Corporal Douglas Newberg interviewed Rosemary Hefner, Administrative Assistant to the Chief of the Fire Department. Ms. Hefner stated she received some basic functional training on the new telephone system to be installed at the Providence Public Safety Complex. Ms. Hefner stated prior to the training session (taught by Susan Rennie, a consultant for Expanets) in a conversation with Ms. Rennie, she learned from Ms. Rennie the telephones in the Providence Public Safety Complex were going to be monitored/recorded. Ms. Hefner did not recall the specific choice of words but understood the meaning of Ms. Rennie. Ms. Hefner could not recall specifically the training date, but it was prior to moving into the new complex in late July 2002.

On March 3, 2003, Corporal Douglas Newberg interviewed Lisa DiFolco, secretary to Colonel Esserman. Ms. DiFolco stated she has been in this position since Chief Gannon through to the present chief, Colonel Esserman. Ms. DiFolco stated she did not attend any training on the telephone system but had heard, through hearsay and rumor, that the telephones were recorded. Ms. DiFolco stated she never received any formal notification that the telephone lines were recorded.

Ms. DiFolco further stated she had never requested a recorded telephone call for any chief. Ms. DiFolco did state she has contacted Mary Lennon in the past to verify that "calls for service" information did come into the Communications Center but did not request the actual recording of the call.

On March 4, 2003, Lieutenant David Neill and Corporal Douglas Newberg, along with Lieutenant Keith Tucker interviewed retired Chief Urbano Prignano in the presence of his attorney, Stephen Famigletti. Mr. Prignano stated he left as chief on January 31, 2001 and had nothing to do with the concept or design of installing a device to record telephone lines in the Providence Public Safety Complex. Mr. Prignano did recall requesting input from various units for design considerations

in the summer of 2000. Mr. Prignano further stated that Sandra Ruggero, a friend and employee at the Animal Control Center, made a comment sometime after his retirement that the telephone lines were recorded, but never gave the comment any further thought. Mr. Prignano throughout the interview adamantly denied any involvement and offered no additional comment.

On March 5, 2003, Corporal Douglas Newberg and Detective John A'Vant interviewed retired Commissioner of Public Safety for the City of Providence John Partington. Commissioner Partington stated he was the Commissioner of Public Safety for the City of Providence from 1990 through October of 2002. Commissioner Partington stated he was responsible for the Police Department, the Fire Department, and the Communications Center.

Commissioner Partington stated he never had any knowledge that the telephones in the Providence Public Safety Complex were being recorded.

Commissioner Partington stated he attended occasional meetings during the planning and construction phases of the complex and never once heard discussion of recording the telephone lines.

Commissioner Partington stated shortly after Director Vieira had a meeting with Colonel Esserman, that he (Commissioner Partington) received a call from Vieira and he made reference to being in some serious trouble. Commissioner Partington further stated Director Vieira made reference to not knowing that all the telephone lines were being recorded and that he was surprised when he found out the percentage of telephone lines being recorded at the Providence Public Safety Complex. Commissioner Partington doubted Director Vieira's credibility during the conversation based on the information he was volunteering.

Commissioner Partington stated shortly after his conversation with Director Vieira, Major Sullivan contacted him. Commissioner Partington stated Major Sullivan's initial conversation

concerned another topic but it eventually led to the recording controversy. Commissioner Partington stated that Major Sullivan indicated Director Vieira came to him (Sullivan) and informed him that a majority of the telephone lines were being recorded and acted somewhat surprised. According to Commissioner Partington, Major Sullivan then stated he discussed the issue with legal and drafted a memo to Chief Esserman.

Commissioner Partington stated he contacted Anthony Vescera, Fiscal Manager, and learned the request for proposal on the telephone system and recording system bid process did not go through Vescera's office. Commissioner Partington found this to be unusual and not the correct protocol.

On March 5, 2003, Lieutenant David Neill contacted Ellie Doyle, Expanets New England contractor who provided training to some employees working in the Providence Public Safety Complex. Ms. Doyle stated only a few people attended the training, which included employees of the Providence Police Department, Providence Fire Department, and civilian personnel. Ms. Doyle did not have any attendance sign-in forms. Ms. Doyle further stated she did recall being questioned regarding if the telephone lines were going to be recorded, and she acknowledged that they were. Ms. Doyle could not provide any further specific information.

On March 10, 2003, Corporal Douglas Newberg interviewed David Costa, Deputy Fire Marshal. Mr. Costa stated he was involved with the design aspects of the fire station within the Providence Public Safety Complex and attended meetings where discussion of the capability of recording all telephone calls was discussed, but he did not know the recordings were actually occurring.

Mr. Costa stated it was in a meeting on July 1, 2002, with Sue Rennie, Deputy Chief Mulcahey, and Frank Parfume that Sue Rennie stated that the intentions of the Communications Center are to record all telephone lines. Mr. Costa stated he then spoke with Chief Rattigan with his concerns of

recording all telephone lines with the Fire Department at the Providence Public Safety Complex. Mr. Costa further stated he left the meeting with the understanding that no telephone lines were to be recorded without further discussions.

On April 30, 2003, Corporal Douglas Newberg met with Lieutenant Keith Tucker of the Providence Police Department to review the telephone system located in the cellblock area. The male, female, and juvenile cellblock areas are supervised by civilian detention officers. There are telephones located in each cell that are outgoing, collect-call only telephones, installed and maintained by TIP Inmate Phone, Inc. of Texas. These telephones are not part of the telephone system of the Providence Public Safety Complex. In addition to the collect call, outgoing only capability, they are also controlled by the civilian detention officer through a switch which controls the operational/non-operational status of the telephone.

The telephones located in the juvenile cellblock area are not used. It is the policy of the Providence Police Department not to allow juveniles to make telephone calls.

There is also a telephone located in the male and female cellblock areas that detainees have access to at the discretion of the detention officer. The telephone extension in the male cellblock area is Extension 2023. The telephone extension in the female cellblock area is Extension 2024. If for some reason the detainee cannot make an outgoing telephone call from the cell, they may be permitted to use the above identified telephone at the discretion of the detention officer.

Corporal Newberg spoke with Louis Navarro of TIP Inmate Phones, Inc. and verified the system requirements.

Corporal Newberg also checked with the municipal court within the Providence Public Safety Complex which revealed that there are no holding cell areas or telephones to which a detainee would have access.

On May 1, 2003, Corporal Douglas Newberg interviewed Gary Mesagno, Project Manager for Hodess Building Company, Inc., of North Attleboro, Massachusetts. Mr. Mesagno was the Program Manager for Gilbane Construction for the Providence Public Safety Complex from March 2001, through September 2002. Mr. Mesagno stated he was not aware of any recording device until articles started appearing in The Providence Journal. Mr. Mesagno stated he attended numerous meetings involving the construction of the Public Safety Complex but only attended approximately six meetings that directly involved the telephone systems, including telephone installation, wire drops, wire requirements, power requirements, and square footage requirements. Mr. Mesagno further stated he was aware Expanets had won the bid to install the telephone systems. Mr. Mesagno stated he recalled Anthony Desmarais mentioning a recording device once while on site during a walk through, but never heard any further discussion.

Mr. Mesagno stated Anthony Desmarais was the lead person for the telephone systems.

Mr. Mesagno further stated his only concerns involved the wiring and installation schedules for the installation of the telephone system.

On May 5, 2003, Corporal Newberg interviewed Robert Nelson of Expanets. Mr. Nelson stated he has been employed by various telephone companies for the past 31 years starting with New England Telephone through his present employment with Expanets. Mr. Nelson stated he has had numerous exposure working on local and State telephone installation contracts, to include the Providence Public Safety Complex.

Mr. Nelson further stated he has known Anthony Desmarais for the past 12 to 13 years on a professional basis and assisted Desmarais with drafting a request for proposal for the telephone system for the Providence Public Safety Complex.

Mr. Nelson indicated the RFP (request for proposal) for the recording device was released

shortly after the initial request for proposal for the telephone system installation, and he provided no assistance with any request for proposal for a recording device.

Mr. Nelson stated that Expanets had a working relationship with Total Recall, and that the two responses to the RFP be merged as part of the Expanets bid.

Mr. Nelson stated he recalled assisting Anthony Desmarais sometime in the spring of 2001, and being awarded the contract in January or February of 2002. Mr. Nelson stated he attended several meetings involving the Providence Public Safety Complex where members of the Police and Fire Departments were present along with Anthony Desmarais, Susan Rennie, Alan Sepe of Purchasing, and others he did not recall. Mr. Nelson recalls having conversations concerning the recording device and the requirement of trunk lines being routed through particular areas for recording purposes. Mr. Nelson further stated he had numerous open conversations with Anthony Desmarais concerning the recording device and its installation, as well as additional conversations with Manny Vieira discussing station-to-station recording which was not present on the initial installation.

Mr. Nelson also recalled a conversation he had with Manny Vieira just prior to the release of information to the news groups concerning the recording device. Mr. Nelson characterized Vieira as being concerned and acting in disbelief that all telephone lines were being recorded, and he further recalls Vieira mentioning call accounting technology. Mr. Nelson recalls his disbelief with Vieira's reaction and indicated that Vieira had knowledge of the Total Recall System and its function and capabilities.

On May 8, 2003, Corporal Douglas Newberg and Detective John Killian interviewed Andrew Garza, Support Engineer for Expanets in Houston, Texas. Mr. Garza was in Rhode Island assisting Detective Killian correlating dates, times, and modem accesses to the access of audio files on the

Total Recall System. Mr. Garza is a Support Engineer for the Total Recall System, to include software development, installation, training, and system configuring both on site and remote. Mr. Garza stated that in March or April of 2002, he did the on-site installation of the Total Recall System at the Providence Public Safety Complex.

Mr. Garza further explained that Expanets would design a database of telephone extensions (stations) to be recorded. This would be determined by working with the customer. The database would then be uploaded with the defined attributes into the Total Recall System.

Mr. Garza further stated the system was web-based, meaning it also can be accessed through an IP address over the internet.

Mr. Garza identified the following Communications personnel who had administrative privileges: Frank Parfume, Greg Haroian, Mary Lennon, Ronald Reposa, Steve Moise, and Anthony Desmarais. Administrative privileges means that the person has the capability of adding, deleting, and modifying the system attributes.

Mr. Garza stated the Total Recall System had dial-up modem access that he would use regularly to perform system maintenance and troubleshooting. Mr. Garza further stated he would access audio files for testing and maintenance purposes only and at times, he listened to only portions of recorded telephone conversations for quality control. Mr. Garza further explained that accessing audio files remotely was also to verify that the system compressor was functioning, all the servers were online, and to further verify audio files were being generated. (Detective Killian's technical summary accounts for file accesses and modem dial-in times by Garza during troubleshooting and maintenance.) Mr. Garza further stated that the modem access number was 401-243-6496.

Mr. Garza further stated that the purpose of the Dell 1650 server is to compress files from a

TRR to an audio file, and the Dell 2500 stores all the WAV files. Mr. Garza determined, by examining the Dell 2500 server, that the first file created was done so on May 23, 2002, at 4:12 P.M.; and the last file created was February 10, 2003, at 4:47 P.M. Mr. Garza further explained the May 23, 2002, file was generated during testing phase just after the initial installation and troubleshooting.

Mr. Garza stated the system did not have the logging capability due to system problems. If the logging capability was available, it could have easily identified accesses to the system.

Mr. Garza recalled training Tony Desmarais, Frank Parfume, and another person he could not recall, in late May 2002, just after the system installation. Mr. Garza's training consisted of web applications, browsing calls, searching calls, listening to calls, deleting calls, establishing the database, and how to add and delete stations to record. Mr. Garza's opinion was that the three individuals were not grasping the concept of the Total Recall System. Mr. Garza recalled a second training session conducted remotely in early August 2002, which included Greg Haroian and Ron Reposa. The training consisted of the same content as the original on-site training session.

Mr. Garza stated that Anthony Desmarais was his contact person. He recalled a time Desmarais asked if the Total Recall System had the capability of an audio noise alerting that a recording is occurring. Mr. Garza explained that it did not have that capability.

Mr. Garza stated he has worked with other police agencies, but he indicated that an announcement message was stated indicating the call might be monitored for quality assurance purposes. Mr. Garza stated he did inform Anthony Desmarais during training of what other departments have done and what could be done to post notification of recording.

On May 15, 2003, Corporal Douglas Newberg interviewed Alan Sepe, acting Director of Public Property Purchasing for the City of Providence. Mr. Sepe stated he has been the acting director for the past 12 1/2 years and was involved in the bid process for the telephone installation for the

Providence Public Safety Complex.

Mr. Sepe stated he communicated with Manny Vieira and Anthony Desmarais of the Communications Center and recalled several meetings where Manny Vieira and Anthony Desmarais were present.

Mr. Sepe recalled after the initial request for proposal authored by the Communications Department, a subsequent request for a recording device was added as a requirement by the Communications Department. Mr. Sepe stated after some discussion with either Manny Vieira and/or Anthony Desmarais and the potential bidders, a decision was made to add the recording device requirement as Addendum No. 6 to the original request for proposal and to make the telephone installation and recording device as one project.

Mr. Sepe did indicate that there was nothing unusual or secretive during the bidding process concerning the recording device.

On June 3, 2003, Corporal Douglas Newberg interviewed Michael J. Dutra, Deputy Assistant Chief of the Providence Fire Department.

On or about January 21, 2003, Chief Dutra had a lengthy conversation with a complainant over the telephone concerning possible inappropriate medical treatment during a Rescue call. Chief Dutra stated that after the telephone conversation, and to ensure the accuracy of the complaint, he contacted and questioned Director Vieira if this particular telephone call was recorded. Chief Dutra further stated Director Vieira had him contact Tony in Communications (Anthony Desmarais). Chief Dutra provided Tony with his telephone extension and the date and time of the telephone conversation, along with a CD-ROM, and received a file containing the complete telephone conversation between himself and the complainant.

Chief Dutra stated prior to his conversation with Director Vieira, he did not have any knowledge

that all the telephone lines were being recorded and that he only investigated this particular call because of the assumption that it had been transferred through the Bureau of Operation Control.

Chief Dutra stated that when he went to the Communications Center, a third party downloaded the audio file and allowed him to briefly listen to it to confirm it was the requested conversation prior to the file being written to a CD-ROM. Chief Dutra could not identify the third party involved, but investigators believed it to be Greg Haroian. Chief Dutra stated he then returned to his office, replayed the entire conversation, and filed the CD-ROM.

On June 3, 2003 Corporal Newberg seized the CD-ROM from Chief Dutra who signed a Release Form.

Corporal Newberg received a signed consent form from Wennzdehl Powell allowing investigators to listen to the recorded telephone conversation between Chief Dutra and Wennzdehl Powell. Corporal Newberg then briefly listened to the audio file located on the CD-ROM and verifed a conversation between Chief Dutra and Wennzdehl Powell.

Corporal Newberg received from the Consultant to the Chief, Andy Rosenzweig, a memo outlining a meeting of February 10, 2003, which included Colonel Esserman, Andy Rosenzweig, Manuel Vieira, Joseph Richardson, Greg Haroian, Anthony Desmarais, Majors Sullivan and Laorenza, and Lieutenant Tucker. The focus of this meeting was the ongoing practice of recording incoming and outgoing telephone calls in the Public Safety Complex. The following are the salient points learned from this meeting which were documented by Andy Rosenzweig:

- Vieira stated he was directed by former Colonel Prignano to create this practice but has no written directive
- Vieira stated the two former acting chiefs, Sullivan and Laorenza, knew of the practice but never questioned it
- There was no sign-off obtained from the City Solicitor prior to the installation and use of the recording device

- No formal notifications were made to employees or the public that the telephone lines were being recorded (Major Simoneau's e-mail was an informal notification)

- Cianci, Corrente, and Coloian had no knowledge of the system

There are additional points documented in Andy Rosenzweig's memo dated February 10, 2003.

Summary

After conducting numerous interviews with members of the Providence Police Department, Providence Fire Department, and Communications Center, to include sworn and civilian personnel, as well as other individuals who had some level of relationship with the City of Providence during the planning and construction phase of the Providence Public Safety Complex, it does appear that the Total Recall System's purchase, installation and use was not performed in a surreptitious manner. Based on the interviews of certain individuals, the recording device was discussed openly and the general consensus of the personnel within the Providence Public Safety Complex and Communications Center was that the telephones were being recorded.

Major Simoneau's e-mail of July 22, 2002, at 1:26 P.M., sent globally to all members of the Providence Police Department and Communications Center, displays an intent by the Major to disseminate this important information. This e-mail was sent to and received by over 500 employees. In addition, the recording device was not secreted in a locked, concealed area but installed on the second-floor utility room. This room was a limited access area due to the technical sensitivity of all the equipment, but the room was accessed frequently by a number of individuals. Cpl. Newberg obtained a printout of the door history report for this utility room and observed over 150 accesses between January 28, 2003 through February 10, 2003.

Testimonial evidence indicates that Command-level officers of the Providence Police

Department, besides Major Simoneau, had knowledge that the telephone lines were being recorded and took no action to limit or prohibit these actions until Attorney John D'Amico, Senior City Solicitor, made statements of the inappropriateness and possible illegalities surrounding the practice of recording all telephone conversations.

Anthony Desmarais was considered the point-of-contact for the design considerations and installation of the telephone system, to include the recording device. Based on numerous interviews and memos obtained during this investigation, including statements made by Anthony Desmarais, he was directed by Manual Vieira, prior to making any decisions on the Total Recall System.

There has been no evidence to support that the installation and use of the recording device went beyond the Director of Communications, Manuel Vieira. In statements made by Manuel Vieira to others, he attempted to distance himself from knowledge and understanding of the recording of telephone lines. In conversations with Robert Nelson, retired Commissioner Partington, Colonel Esserman, and Andy Rosenzweig, Manuel Vieira avoided any direct responsibility; however, memos and statements that were reviewed indicated Manuel Vieira was directly responsible for the purchase and installation of the recording device.

Based upon the above facts and statements, this investigation will be forwarded to the Attorney Generals Office for review and determination if the actions of certain individuals are warranted for criminal liability, to include those individuals who listened to recorded audio conversations under Rhode Island General Law (RIGL) 12-5-1, *Interception of Wire and Oral Communications.*

Respectfully Submitted,

Douglas C. Newberg
Detective Corporal
RI State Police