**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

THOMAS WALDEN, ET AL

VS. C.A. NO. 04-304S

CITY OF PROVIDENCE, ET AL

Consolidated with:

JOHN C. CHMURA, ET AL

VS. C.A. NO. 04-553S

CITY OF PROVIDENCE, ET AL

**PRE-TRIAL MEMORANDUM OF DEFENDANTS, CITY OF PROVIDENCE DAVID CICILLINE AND DEAN ESSERMAN**

Respectfully Submitted,

Kevin F. McHugh, (#3927)
Senior Assistant City Solicitor
City of Providence Law Department
275 Westminster Street
Providence, Rhode Island 02903
(401) 421-7740 Ext. 333
(401) 351-7596 Fax

Dated: January 17, 2008

**TABLE OF CONTENTS**


I. Proposed Voir Dire Questions -------------------------------------------- 3

II. Proposed Findings of Facts ---------------------------------------------- 4

III. Witnesses ------------------------------------------------------------------ 5-7

IV. Exhibits -------------------------------------------------------------------- 8-15

V. Memorandum of Law ------------------------------------------------ 15
- A. 42 U.S.C. § 1983 -------------------------------------------- 15
- B. Fourth Amendment ------------------------------------------ 18
- C. Title III Claim ------------------------------------------------ 20
- D. State Law Claim -------------------------------------------- 22

VI. Probable Length of Trial ------------------------------------------ 24

VII. Pending Matters -------------------------------------------------- 24

VIII. Proposed Jury Instructions ---------------------------------------- 24-31

IX. Proposed Jury Verdict Sheet ---------------------------------------- 31-38

**I. Proposed Voir Dire Questions**

1. There has been a great deal of publicity surrounding Urbano Prignano, Jr. over the past year. Do any of you have a negative opinion of Urbano Prignano, Jr.?

2. If so, would that cause you to be unable to render a fair and impartial verdict in this case?

3. There has been some publicity surrounding the Providence Police Department and its testing procedures over the past several years. Do any of you have a negative opinion of the Providence Police Department?

4. If so would that cause you t o be unable to render a fair and impartial verdict in this case.

5. Would any of the publicity regarding corruption in Providence City Hall cause you to be unable to render a fair and impartial verdict in this case?

6. Do any of you have a negative opinion of Dean Esserman?

7. If so, would that make you unable to render a fair and impartial verdict in this case?

8. Do any of you have a negative opinion of David Cicilline?

9. If so, would that make it difficult to render a fair and impartial verdict in this case?

10. Is there any reason which was not covered by the Court or the lawyers that would make it difficult for you to render affair and impartial verdict with respect to the City of Providence?

## II. Proposed Findings of Facts

### A. Statement of Facts

These consolidated cases involve 154 Plaintiffs and six Defendants. Plaintiffs are employees of the City of Providence Department of Public Safety, including firefighters, police officers, clerks and other personnel, as well as some family members of these employees. The Defendants are: City of Providence, by and through Steven T. Napolitano, its Treasurer; David N. Cicilline, its Mayor and Acting Public Safety Commissioner; Dean Esserman, in his Capacity as Chief of Police; Urbano Prignano, Jr., individually and in his capacity as former Chief of Police; Manuel Vieira, individually and in his former capacity as Communications Director; Mary Lennon, individually and in her former capacity as Chief of Operations of the Communications Department; and John Does 1-25. The Providence Public Safety Complex, which encompasses the Providence Fire Department and the Providence Police Department, opened in September 2002. The Safety Complex telephone system was installed sometime in 2002. The telephone system was put out to bid pursuant to Section 1007 (c) (1) of the Providence Home Rule Charter. The Request for Proposal was for "furnish and install telephone and data equipment and cable for new Fire and Police Complex" and was dated July 30, 2001. On January 14, 2002**,** the Board of Contract and Supply awarded Expanets the contract for what was known as the Total Recall System. The telephone system was to record all lines coming into and out of the Safety Complex as well as the communications center. It did not record station-to-station calls; nor did it record the private numbers in the various fire stations. Only three of the calls were ever downloaded and heard. One was from a

request by Chief Dutra of the Fire Department regarding a man in the water and the Fire Department's response. A second request was made by Major Dennis Simoneau of the Police Department regarding the towing of a car. A third request was from a City Councilman.

On July 22, 2002, Major Simoneau sent an email to the entire police department and its staff, indicating that the telephone lines in the Safety Complex were being recorded.

On February 14, 2003, Defendant Dean Esserman learned of the existence of the Total Recall System and ordered it disconnected. It remains disconnected at the Providence Public Safety Complex.

The Rhode Island State Police were alerted to the existence of the Total Recall System on February 14, 2003. The Rhode Island State Police responded to the public safety complex and launched an investigation of the Total Recall System. The State Police investigation was forwarded to the Attorney General's office for review and determination as to whether the action of certain individuals was warranted for criminal liability. The Attorney General's office determined that there was no criminal liability.

## III. Witnesses

a. Alan Sepe - will testify as to the bidding process for the Total Recall System.

b. Debra Silva Rocha – will testify as to Major Simoneau's e-mail

c. Dennis Simoneau - will testify as to the e-mail he sent out

d. Frank Parfume - will testify as to the Total Recall System

e. Gerald P. Carvalho - will testify as to Major Simoneau's e-mail

f. Greg Desmarais - will testify as to the Total Recall System

g. Greg Haroian - will testify as to the Total Recall System

h. James Rattigan - will testify as to his knowledge of the Total Recall System

i. John Chmura - will testify as to Major Simoneau's e-mail

j. John F. Killian - will testify as to his investigation of the Total Recall System

k. Joseph Richardson - will testify as to the Total Recall System

l. Keith Tucker - will testify as to Major Simoneau's e-mail

m. Lisa DiFolco - will testify as to Major Simoneau's e-mail

n. Mary Lennon - will testify as to the Total Recall System

o. Monica D'Antuono - will testify as to Major Simoneau's e-mail

p. Patrick McNulty - will testify as to Major Simoneau's e-mail

q. Robert Bennett - will testify as to the Police Department's move into the Public Safety Complex

r. Ronald R. Gendron - will testify as to the Attorney General's Investigation

s. Ronald Reposa - will testify as to the Total Recall System

t. Sandra Manning - will testify as to Major Simoneau's e-mail

u. Stephen Moise - will testify as to the Total Recall System

v. Tony Desmarais - will testify as to the Total Recall System

w. Douglas Newburg - will testify as to the State Police Investigation

x. Gary Mulcahey - will testify as to his knowledge of the Total Recall System

y. Richard T. Sullivan - will testify as to his knowledge of the Total Recall System

z. Manuel Vieira - will testify as to his knowledge of the Total Recall System

aa. Mike Kopko - will testify as to the system in use to track e-mails

bb. Jason DeCesare - will testify as to Major Simoneau's e-mail

cc. Liz Wajda - will testify as to Major Simoneau's e-mail

dd. Louis Salanaro - will testify as to Major Simoneau's e-mail

ee. Robert Sabinski - will testify as to Major Simoneau's e-mail

ff. Danny Gannon - will testify as to Major Simoneau's e-mail

gg. Sean Carroll - will testify as to Major Simoneau's e-mail

hh. Joe Migliaccio - will testify as to Major Simoneau's e-mail

ii. Jason Ferreira - will testify as to Major Simoneau's e-mail

jj. Scott Petrucci - will testify as to Major Simoneau's e-mail

kk. Kenneth Cohen - will testify as to Major Simoneau's e-mail

ll. Gail Zienowicz - will testify as to Major Simoneau's e-mail

mm. Kevin Ziegelmayer - will testify as to Major Simoneau's e-mail

nn. Scott Pallagio - will testify as to Major Simoneau's e-mail

oo. Max Doorley - will testify as to Major Simoneau's e-mail

pp. Nancy Santopadre - will testify as to Major Simoneau's e-mail

qq. Oscar Perez - will testify as to Major Simoneau's e-mail.

rr. John St. Laurence - will testify as to Major Simoneau's e-mail

ss. Ann Marie Millard - will testify as to Major Simoneau's e-mail

tt. Anthony Giardello - will testify as to Major Simoneau's e-mail

uu. Sandra Manning - will testify as to Major Simoneau's e-mail

vv. Carolyn Arias - will testify as to Major Simoneau's e-mail

ww. Steven Melaragno - will testify as to Major Simoneau's e-mail

**IV. Exhibits**

A. Section 1007 of the Providence Home Rule Charter – Board of Contract and Supply.

B. RFP's for Telephone System for Public Safety Complex.

C. Letter awarding contract to Expanets.

D. Section 1001 of the Home Rule Charter – Department of Public Safety.

E. E-mail of Major Simoneau.

F. List of Recipients of Major Simoneau's e-mail.

G. Total Recall System

H. Answers to Interrogatories of Jamie Arajo

I. Answers to Interrogatories of Andrea Baker

J. Answers to Interrogatories of Michelle A. Barrett

K. Answers to Interrogatories of Robert J. Barrett

L. Answers to Interrogatories of Michael J. Bates

M. Answers to Interrogatories of Bonnie J. Benson

N. Answers to Interrogatories of Diane K, Bretanha

O. Answers to Interrogatories of Joseph W. Bretanha

P. Answers to Interrogatories of Lauren N. Bretanha

Q. Answers to Interrogatories of Leanne AA. Bretanha

R. Answers to Interrogatories of Amy L. Brodeua

S. Answers to Interrogatories of Daniel J. Brodeur

T. Answers to Interrogatories of Megan Brodeur

U. Answers to Interrogatories of Michaela Brodeur

V. Answers to Interrogatories of Sondra Buote

W. Answers to Interrogatories of Margaret Burns

X. Answers to Interrogatories of Paul Buteau

Y. Answers to Interrogatories of Angelique Carvalho

Z. Answers to Interrogatories of Belkys A. Carvalho

------------------

A-1.. Answers to Interrogatories of Garrick Carvalho

B.-1Answers to Interrogatories Gerald P. Carvalho

C-1. Answers to Interrogatories of Anthony Cataldo

D-1.. Answers to Interrogatories of Jennifer Caltado

E.-1 Answers to Interrogatories of Joseph Cataldo

F.-1. Answers to Interrogatories of Robert M. Cataldo

G.-1. Answers to Interrogatories of Christina Cataldo

H.-1Answers to Interrogatories of Diane G. Celani

I.-1. Answers to Interrogatories of Peter J. Celani

J.-1. Answers to Interrogatories of John C. Chumura

K.-1.. Answers to Interrogatories of Vincent P. Clements

L.-1. Answers to Interrogatories of Robert D.. Crellin

M.-1. Answers to Interrogatories of Madelaine DeRobbio

N.-1.. Answers to Interrogatories of Laura E. Doughty

O.-1. Answers to Interrogatories of Paul A. Doughty

P.-1. Answers to Interrogatories of Rebecca A. Doughty

Q.-1. Answers to Interrogatories of Stephanie N. Doughty

R.-1. Answers to Interrogatories of Maria Bianco Drohan

S.-1. **A**nswers to Interrogatories of Mary Ellen Dubaldo

T.-1. Answers to Interrogatories of Donald J. Dubuque

U.-1. Answers to Interrogatories of Kathleen A. Dubuque

V.-1. Answers to Interrogatories of Josheta Gabbidon

W.-1. Answers to Interrogatories of Laurie Gannon

X.-1. Answers to Interrogatories of Diane G. Gelani

Y.-1. Answers to Interrogatories of Yvonne Giragosian

Z.-1. Answers to Interrogatories of Julia D. Goins

-------------

A.-2. Answers to Interrogatories of Sarah Good

B-2. Answers to Interrogatories of Kathleen Greenwell

C.-2. Answers to Interrogatories of Kenneth G. Greenwell

D.-2. Answers to Interrogatories of Emilia Grover

E.-2.. Answers to Interrogatories of John H. Hannon

F.-2. Answers to Interrogatories of Susan Harrington

G-.2. Answers to Interrogatories of Ramona Mitris Higginson

H.-2. Answers to Interrogatories of William J. Higginson, Jr.

I.-2. Answers to Interrogatories of Stephen J. Hughes

J.-2. Answers to Interrogatories of Carole A. Hughes

K.-2. Answers to Interrogatories of Deborah McIntyre Hughes

L.-2. Answers to Interrogatories of Laurie Ann Hughes

M.-2. Answers to Interrogatories of Michael J. Hughes

N.-2. Answers to Interrogatories of Richard J. Hughes

O.-2. Answers to Interrogatories of Robert P. Hughes

P.-2. Answers to Interrogatories of Carolyn Kennedy

Q.-2. Answers to Interrogatories of Edward S. Kennedy

R.-2. Answers to Interrogatories of Laura Kennedy

S.-2. Answers to Interrogatories of Kory Z. Kenyon

T.-2. Answers to Interrogatories of Paige M. Kenyon

U.-2. Answers to Interrogatories of Susan M. Kenyon

V.-2. Answers to Interrogatories of William R. Kenyon, Jr.

W.-2. Answers to Interrogatories of Lori A. Leonard

X.-2. Answers to Interrogatories of Patrick J. Leonard

Y.-2. Answers to Interrogatories of Irene B. Lescault

Z.-2. Answers to Interrogatories of Michael G. Lescault

------------------

A.-3. Answers to Interrogatories of Donna Luce

B.-3. Answers to Interrogatories of Theresa J. Mancini

C.-3. Answers to Interrogatories of Sandra Maning

D.-3. Answers to Interrogatories of Craig Martin

E.-3. Answers to Interrogatories of Coleen F. McMichael

F.-3. Answers to Interrogatories of Peter K. McMichael, III

G.-3. Answers to Interrogatories of Peter J. McMichael, Jr.

H.-3. Answers to Interrogatories of Joseph F. Mellor

I.-3. Answers to Interrogatories of Teresa A. Mellor

J.-3. Answers to Interrogatories of Melissa Melvin

K.-3. Answers to Interrogatories of Joseph L. Molis

L.-3. Answers to Interrogatories of Deborah L. Molis

M.-3. Answers to Interrogatories of Jacquelyn L. Moreino

N.-3. Answers to Interrogatories of Joseph P. Moreino, Jr.

O.-3. Answers to Interrogatories of David Neri

P.-3. Answers to Interrogatories of Carol O'Brien

Q -3..Answers to Interrogatories of Christopher R. O'Halloran

R.-3. Answers to Interrogatories of Coleen E. O'Halloran

S.-3. Answers to Interrogatories of Robin Owens

T.-3. Answers to Interrogatories of Maribel Patino

U.-3. Answers to Interrogatories of Eugenia M. Pattek

V.-3. Answers to Interrogatories of Andrea Payne

W.-3. Answers to Interrogatories of Bethany Payne

X.-3. Answers to Interrogatories of Darlene Belhumeur Payne

Y.-3. Answers to Interrogatories of Laura Behumeur Payne

Z.-3. Answers to Interrogatories of Phillip E. Payne

\--------------

A.-4.. Answers to Interrogatories of Christopher E. Petit

B.-4. Answers to Interrogatories of Jeanne M. Petit

C. -4. Answers to Interrogatories of Kimberly E. Picozzi

D.-4. Answers to Interrogatories of Paul M. Picozzi

E.-4. Answers to Interrogatories of Donna M. Pietrunti

F.-4. Answers to Interrogatories of Arleen Ann Pullon

G.-4. Answers to Interrogatories of Kara E. Randall

H.-4. Answers to Interrogatories of Matthew L. Randall

I. -4. Answers to Interrogatories of Mark R. Randall

J.-4. Answers to Interrogatories of Tina L. Randall

K.-4. Answers to Interrogatories of Daniel Rathbone

L.-4. Answers to Interrogatories of Donald Rathbone

M.-4. Answers to Interrogatories of Lori Rathbone

N.-4. Answers to Interrogatories of Brendan Reddington

O.-4. Answers to Interrogatories of Daniel Reddington

P.-4. Answers to Interrogatories of Frank Reddington, Jr.

Q.-4. Answers to Interrogatories of Margaret M. Reddington

R.-4. Answers to Interrogatories of Jordan Reilly

S.-4. Answers to Interrogatories of Robert J. Reilly

T.-4. Answers to Interrogatories of Brandon D. Reilly

U.-4. Answers to Interrogatories of Roger D. Richards, Jr.

V.-4. Answers to Interrogatories of Ashley Rinaldi

W.-4. Answers to Interrogatories of Daniel V. Rinaldi

X.-4. Answers to Interrogatories of Desiree Rinaldi

Y.-4. Answers to Interrogatories of Kyle Robert

Z.-4. Answers to Interrogatories of Ernest Robert

------------

A.-5.. Answers to Interrogatories of Ashlee Robert

B.-5. Answers to Interrogatories of Jackie Robert

C.-5. Answers to Interrogatories of Abigal Robinson

D.-5. Answers to Interrogatories of Emma Robinson

E.-5. Answers to Interrogatories of Janet D. Robinson

F.-5. Answers to Interrogatories of Frederick Robinson

G.-5. Answers to Interrogatories of James J. Rock

H.-5. Answers to Interrogatories of Kayla Ruhle

I.-5. Answers to Interrogatories of Steven G. Ruhle

J.-5. Answers to Interrogatories of Steven G. Ruhle, Jr.

K.-5. Answers to Interrogatories of Michael C. Segee

L.-5. Answers to Interrogatories of Susan M. Segee

M.-5. Answers to Interrogatories of Carol M. Serbst

N.-5. Answers to Interrogatories of William L. Serbst, III

O-5. Answers to Interrogatories of Debra L. Rocha Silva

P.-5. Answers to Interrogatories of Kerrin Swann

Q.-5. Answers to Interrogatories of Mark Tillman

R.-5. Answers to Interrogatories of Joseph R. Vingi, III

S.-5. Answers to Interrogatories of Joseph R. Vingi, Jr.

S.-5. Answers to Interrogatories of Mary M. Vingi

T.-5. Answers to Interrogatories of Sophia A. Vingi

U.-5. Answers to Interrogatories of Christopher S. Wagner

V.-5. Answers to Interrogatories of Linda E. Walden

W.-5. Answers to Interrogatories of Thomas Walden

X.-5. Answers to Interrogatories of Carolyn A. Wentworth

Y.-5. Answers to Interrogatories of Paul A. Wentworth

Z.-5. Answers to Interrogatories of Ernest E. Young, IV

-------------------

A.-6. Answers to Interrogatories of Linda S. Young

B-6. Response to Request for Production of Jordan Reilly

C.- 6. Response to Request for Production of Kerrin Swann

D.-6. Response to Request for Production of Peter K. McMichael, III

E.-6. Response to Request for Production of Stephanie Doughty

F.-6. Response to Request for Production of Laura Doughty

G.-6. Response to Request for Production of Rebecca Doughty

H.-6. Response to Request for Production of Steve Ruhle, Jr.

I.-6. Response to Request for Production of Kayla Ruhle

J.-6. Response to Request for Production of Megan Brodeur

K.-6. Response to Request for Production of Michaela Brodeur

## V. MEMORANDUM OF LAW

### A. 42 U.S.C. §1983

The Plaintiff in a 1983 claim has the burden of proving each and every element of her claim. Thus, in order to prevail, the Plaintiff must demonstrate the following: First, that the conduct complained of was committed by person acting under the color of law; Second, that the conduct deprived the Plaintiff of a right protected by the federal constitution; and Third, that the defendant's conduct was the proximate cause of the

injuries sustained by the Plaintiff. Viewed in this manner, municipal liability may be based upon the municipality's (1) deliberately indifferent policies which (2) directly cause a violation of the plaintiff's constitutional rights.[1] Municipal liability may attach only where the municipality's final policy maker(s) are themselves deliberately indifferent and aware of the alleged failings: In the beginning its analysis of municipal liability. Canton stated:

> In Monell …we decided that a municipality can be found liable under §1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior… liability will not attach under §1983… "It is only when the 'execution of the government's policy or custom … inflicts the injury that the municipality may be held liable under §1983." Springfield …, 480 U.S. 257, 267 . Quoting Monell …

Thus, our first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. [2]

Respondeat Superior liability cannot establish municipal liability because municipal liability exists "only where the municipality itself causes the constitutional violation." It is therefore necessary to establish the existence of a municipal policy or custom before liability may attach, because it is only through the municipality's establishment of a policy or custom that the municipality itself as opposed to its agents – may be said to have acted so as to have caused the constitutional violation. [3]

---

[1] As stated by the Supreme Court in Board of County Com'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 397 117 S.Ct 1382, 1385 *U.S., 1997);
(A) "policy" giving rise to liability cannot be established merely by identifying a policymaker's conduct that is properly attributable to the municipality. The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. See *Monell, supra* at 694, 98 S.Ct. at 2027. That is, a plaintiff must show that the municipal action was taken with the requisite degree of **culpability** and must demonstrate a direct **causal** link between the municipal action and the deprivation of federal rights"

[2] City of Canton Ohio v. Harris 489 U.S. 378, 385-386, 109 S.Ct. 1197, 1203 (U.S., 1989).

As a result, there always must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" before municipal liability may attach.

Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered… The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal labiality based on an exercise of that discretion… The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. [4]

Consequently, a distinction must be drawn between those municipal officials who are "final policy makers and those other officials who merely exercise discretion or are just policy makers without final policy making authority. [5] The exercise of discretion by an official without final policymaking authority cannot establish municipal liability. Moreover, even where a final policy maker delegates authority to another official, then the decisions made by that official cannot constitute municipal policy unless the policymaker not only approves that decision, but also approves the basis for it. [6]

---

[3] See also, Pembaur v. City of Cincinnati, 475 U.S. 469, 479-480, 106 S.Ct. 1292, 1298 (U.S. Ohio, 1986 stating: The **"official policy" requirement was intended to distinguish acts of the municipality from acts of employees** of the municipality, and thereby make clear the municipal liability is limited to action for which the municipality is actually responsible. S [FN8]….

[4] Pembaur v. City of Cincinnati, 475 U.S. 469, 481-482, 106 S.Ct. 1292, 1299 (U.S. 1986).

[5] Whether an individual has final policy making authority is determined by **reference to state law, ordinance, or regulation.** As stated by Justice O'Connor's plurality opinion in City of St. Louis v. Praprotnik, 485 U.S. 112, 125, 108 S.Ct. 915, 925 (U.S. 1988):
Without attempting to canvas the numberless factual scenarios that may come to light in litigation, we can be confident that **state law (which may include valid local ordinances and regulations)** will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.

[6] A couple of years after Pembaur, the Supreme Court stated the following in examining distinction between the exercise of final policy making authority and the exercise of discretion in City of St. Louis v.

This ruling is clearly consistent with the Court's prior pronouncements: **First:** If the "exercise or discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability", **Second,** under Pembaur and Cannon municipal liability may not attach unless the municipality's final policy makers are themselves deliberately indifferent and aware of the alleged failings.

At east one court has held that in cases such as this, Plaintiff must prove that the municipality had an official written policy to violate employees' privacy rights. See Abbott v. Village of Winthrop Harbor, 205 F. 3d 976 (7th Cir. 2000), at 981.

**B. Fourth Amendment**

Where the alleged deprivation of a constitutional right hinges (as it does here) on a violation of a Fourth Amendment Right, the Plaintiffs must establish that they possessed a justifiable, reasonable, or legitimate expectation of privacy in the thing alleged to have been invaded by government. See Smith v. Maryland, 442 U.S. 735, 740 (1979). The Fourth Amendment inscribes a fundamental right to privacy in wire communications. See Katz v. United States, 389 U.S. 347 (1967). But in order to establish a violation of this fundamental right, plaintiffs must demonstrate two things:

---

Praprotnik, 485 U.S 112, 126-129, 1-8 S.Ct. 915, 925-927 (U.S., 1988) in the context of the delegation of authority by a policy maker to an official exercising discretion:
"As …Pembaur recognized, **special difficulties can arise when it is contended that a municipal policy maker has delegated his policymaking authority to another official…**If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policy making authority to others, §1983 could not serve its intended purpose.
When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the act of the municipality. **Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final…**

"first, that [the plaintiff] exhibited an actual (subjective) expectation of privacy and, second, that the expectations be one that society is prepared to recognize as 'reasonable.'" Id. at 361 (Harlan J., concurring). The second prong of this inquiry – whether the expectation is reasonable – requires a balancing of the need for the search (or seizure) against the level of intrusion of personal rights; consequently, a court is charged with the responsibility of weighing "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place which it is conducted. Bell v. Wolfish 441 U.S. 520, 559 (1979). [d]etermining the subjective component of the test requires only a straight forward inquiry into the complainant's state of mind"). See Veja Rodrigues v. Puerto Rico Tel. Co. 110 F.3d 174, 178 (1st Cir. 1971).

("[L] Listening in to a telephone conversation on an extension, with the consent of one party, does not violate the rights of another party under the Fourth Amendment."); United States v. Miller, 720 F.2d 229, 228 (1st Cir. 1987). See also Vega-Rodriguez, 110 F.3d at 180 n.4 (observing that notice "bears heavily on both the subjective and objective reasonableness of an employee's expectation of privacy"). Consent is often an important factor because it significantly reduces the effect and scope of the intrusion. See Miller, 720 F.2d at 228.

Any inquiry into the objective reasonableness of an asserted expectation of privacy is case specific and fact intensive, Vega-Rodrigues, 110 F.3d at 178.

{T]he surreptitious recording of unprivileged but private calls, if proven does not as a matter of law involve an invasion of privacy that far outweighs defendants proffered justifications."

Federal case law has specifically delineated a fundamental privacy in wire communication based on the Fourth Amendment and applied this to the recording of telephone conversations. Blake v. Wright, 179 F.2d at 1008. (6th Cir. 1999).

The capture of private telephone conversations is a search for Fourth Amendment purpose.

In Re: State Police Litigation 888 F. Supp. at 1260.

**B. Title III Claim**

18 U.S.C. § 2520 provides a private right of action for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." To show a violation of § 2511, Plaintiffs must prove that Defendants "intentionally intercept[ed], endeavor[ed] to intercept, or procure[ed] any other person to intercept or endeavor to intercept, any wire, oral or electronic communication." 18 U.S.C. § 2511(1)(a). Plaintiffs must establish (1) that Title III is applicable to the Defendants; (2) that Defendants intercepted, sought to intercept, or procured another person to intercept their communications through the use of any electronic, mechanical, or other device; (3) Plaintiffs had an expectation that their oral communications were not subject to interception; and (4) if Plaintiffs had such an expectation, the expectation was justified under the circumstances. See Anderson v. City of Columbus, Georgia, 374 F.Supp.2d 1240, 1244 (M.D.Ga.,2005).

Further, Defendants are not liable if the exceptions do apply. First, an exception exists for any communications received through a telephone component used "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii); see Amati v. City of Woodstock, 176 F.3d 952, 954 (7th Cir.1999)

(discussing the "ordinary course of law enforcement" exception). Second, a party may avoid liability under what is known as the "consent exception." Under § 2511(2)(c)), a person is permitted to intercept communications "where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." Although this consent can be implied, it must still be "consent in fact." United States v. Lanoue, 71 F.3d 966, 981 (1st Cir.1995) abrogated on other grounds by United States v. Watts, 519 U.S. 148 (1997). Although "consent might be implied in spite of deficient notice," "[t]he surrounding circumstances must convincingly show that the party knew about and consented to the interception in spite of the lack of formal notice or deficient formal notice." Id. Thus, irrespective of whether the elements of § 2511(1)(a) are met, if Defendants can demonstrate that the recording falls within either of these exceptions, they will successfully defeat Plaintiffs' claims under Title III.

Another exception, which would preclude recovery, is the "ordinary course of law enforcement" exception, which applies to the interception or recording of communications on any equipment "being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties. See § 2510(5)(a)(ii). Title III recognizes an exception for recordings that fall outside the purpose of the statute, "to regulate the use of wiretapping and other electronic surveillance for investigatory purposes." Id. at 955. Thus, recording which is "ordinary," or, as some courts have explained, "routine" and "noninvestigative," may fall within the § 2510(5)(a)(ii) exception. Id.; see also Arias, 202 F.3d at 558. Recording all incoming and outgoing calls in a police station may, therefore, fall within the ordinary course of law enforcement

exception under Title III if it can be shown that the recording is routine and noninvestigative.

**Damages**

This Court has ruled that, were the Defendants to be found liable under the Federal Wiretap Statute, the Court may, in its discretion, award damages or decline to do so. See 18 U.S.C. §2520I(2); see also Order on Defendants' Motion in Limine for a Pretrial Ruling on Damages, dated November 29, 2007, at 2. Since actual damages are not alleged here, only statutory damages may be assessed, in an amount equal to the greater of $100 per day for each day of violation or $10,000. Id. at 6. The trial court has discretion to decline to award damages, even though the statute may have been violated. Nalley v. Nalley, 53 F.3d 649 (4thCir.1995). Plaintiffs may elect under which of the statutes (federal or state) they might recover.

With regard to attorney's fees, this court has held that it may, "after considering the degree of success and nature of the award, lawfully award low fees or no fees." See Order on Defendants' Motion in Limine for a Pretrial Ruling on Damages, dated November 29, 2007. Too, under the state Wiretap Statute, the Court "may conclude that the Plaintiffs are not entitled to recover costs and attorneys' fees. Id. at 6.

This Court has ruled that the Municipal Defendants are immune from an award of punitive damages under either the Federal or State Wiretap statutes. Id.

**C. State Law Claims**

Under R.I. Gen. Laws § 9-1-28.1, in order to establish a violation of a right to privacy, plaintiffs must show that the defendants engaged in "an invasion of something that is entitled to be private or would be expected to be private," and the invasion must

have been "offensive or objectionable to a reasonable man." This requires both a subjective and objectively reasonable expectation of privacy. See Pontbriand v. Sundlun, 699 A.2d 856 (R.I.1997). Plaintiffs must prove they had a subjective or objectively reasonable expectation of privacy in their telephone calls into and out of the Safety Complex. Under this statute, for Plaintiffs to prove that their "right to be secure from publicity that reasonably places another in a false light before the public" was violated, they must have alleged and proved that "[t]here has been some publication of a false or fictitious fact which implies an association which does not exist", and that "[t]he association which has been published or implied would be objectionable to the ordinary reasonable man under the circumstances."

R.I. Gen. Laws § 11-35-21 makes it punishable for any person to "willfully intercept[ ], attempt[ ] to intercept, or procure[ ] any other person to intercept or attempt to intercept, any wire, electronic, or oral communication." Plaintiffs must prove that that Defendants "willfully," meaning deliberately or intentionally, intercepted the Plaintiffs' telephone calls.

The Rhode Island wiretap statute, R.I. Gen. Laws § 12-5.1-1 provides that "[a]ny person whose wire, electronic, or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses the communications." R.I. Gen. Laws § 12-5.1-13. Thus, only where an interception is made in nonconformance with § 12-5.1-1 et seq. , a cause of action may lie.

In order to prove that the Municipal Defendants are liable under the state statutes, Plaintiffs must prove liability based on the doctrine of *respondeat superior*. To

do so, Plaintiffs must prove both that City employees violated a statute and that such violation was the product of a municipal practice or policy. Cruz v. Town of North Providence, 833 A.2d 1237, 1238 (R.I.2003). Therefore, Plaintiffs' failure to prove that any such violation by an employee was pursuant to a municipal practice or policy would serve to preclude recovery.

## VI. Probable length of Trial

The Defendants estimate that it will take one week for their case and six weeks for the entire trial.

## VII. Pending matters

The Defendants have a Motion in Limine pending to limit the testimony of Plaintiff's expert and a Motion in Limine pending to exclude any and all post-incident evidence.

## VIII. Proposed Jury Instructions

### BURDEN OF PROOF- GENERAL

1. In civil cases of this kind, the law places the burden of proof upon the plaintiff. This means simply that the law imposes upon each particular Plaintiff the obligation of proving that which that plaintiff asserts or claims.

2. In other words, speaking generally under the law, he who advances a proposition has the burden of sustaining its validity.

3. A defendant is under no obligation to disprove that which the plaintiff asserts or claims. Rather, the plaintiff must prove that which he or she has asserted or claimed.

4. That law further requires that the plaintiff prove that which he or she asserts or claims by a fair preponderance of the evidence. Where evidence adduced either for or against a given proposition outweighs contrary evidence, such evidence is said to preponderate.

5. Therefore, proof by a fair preponderance of the evidence means proof by the greater weight of the evidence. So when I say to you that a Plaintiff her has the burden of proof on any proposition, by a fair preponderance of the evidence, I mean simply this: I mean you must be persuaded considering all the evidence in the case, that the proposition on which the plaintiff has the burden of proof is more probably true than not.

6. If he should fail to establish any essential element of his case by a fair preponderance of the evidence, then you must find for the defendant.

7. The burden of proving all elements of the case against the defendant lies with the plaintiff. The defendant need not prove anything.

**A. §1983 Municipal Liability**

**(a) Generally:**

To find in favor of the plaintiffs and against the City you must find: (1) that the violation of the plaintiff's rights was pursuant to a municipal policy or long-s'anding custom or practice of the City; and (2) the final policymaker(s) for the City approved and were deliberately indifferent to the policy, custom or practice. If you find that the plaintiff has filed to establish any of these elements, you cannot hold the City liable.

**(b) Existence of municipal custom or policy:**

In order to establish there 1983 claim against the City, the plaintiff is required to establish an additional element that they need not prove against the individual defendants.

To hold the City liable under 1983, the plaintiffs must prove by a preponderance of the evidence that the violation of there federally protected rights was pursuant to the enforcement of a policy, custom or practice of the City.

The fact that an employee of a municipal entity, such as the Defendant, City deprived the plaintiff of a federal right is not alone a sufficient basis for imposing liability against the municipal entity. In order to hold a municipal entity liable under §1983, the plaintiff must demonstrate that his federally protected rights were violated pursuant to the enforcement of a municipal policy, custom or practice.

Absent the above, the municipality can be held accountable for the Constitutional deprivation of the plaintiff only if the deprivation was the result of the municipality's policy, custom or practice. In other words, the mu’icipality's policy must be the moving force of the Constitution’l violation, City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985).

In other words, the plaintiff must prove the existence of an **unconstitutional municipal policy** before the municipality can be held liable under §1983. If this policy is not officially sanctioned or ordered, the municipality may still be found liable under §1983, only if the plaintiff can show that the complained of action by the officer(s) in question was pursuant to a widespread practice that is so permanent and well settled that it constitutes a custom or usage with the force of law, City of St. Louis v. Praprotnik, 485 U.S. 107 (1988).

A custom or practice is a well settled, persistent, widespread course of conduct by municipal officials having the force of law. Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination you

may consider how long the alleged practice existed, the number and percentage of municipality officials engaged in the practice, and the similarity of the conduct engaged in by its employees.

**(c) Policy made by official with final policy making authority:**

The Plaintiff must show that this policy has been officially sanctioned or ordered by those municipal officials who have **final policy making authority.** City of St. Louis vs. Praprotnik, 485 U.S. 107 (1988). I will instruct you as to who those municipal officials are.

An official to whom final policy-making authority ahs been delegated is an official whose actions can be said to represent a decision of the municipal entity itself, the policy-making official may cause injury by issuing orders, by rectifying a subordinate's decision and the basis for it, or by establishing a'policy for municipal employees that, when followed by those employees, results in injury.

Municipal liability under §1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers…

Where a final policy maker de"egates authority to another public official, then the decision made by that public official do not constitute municipal policy unless the policymaker not only approves that decision, but also approves the basis for it. City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 925 (U.S., 1988).

**d. Causation:**

In order to hold a municipality liable, the plaintiff must also prove that the policy or practice is closely related to the ultimate injury. In other words, there must be

proximate closely related to the ultimate injury. In other words, there must be proximate cause between the policy or practice and the injury that the plaintiff is claiming.

**e. Liability of each defendant to be separately considered:**

I want to emphasize here that throughout your deliberations you must consider plaintiffs' claim against each defendant separately. Each defen'ant was not necessarily involved in any deprivation of federally protected rights. You cannot lump the defendants together; plaintiffs must prove each element of there claim, by a preponderance of the evidence, against each individual defendant before you can find liability as to that Defendant. Therefore, you must make a finding with regard to each individual defendant.

**B. Title III claims**

To show a violation of 18 U.S.C. §§ 2510 *et seq*, you must find that Defendants "intentionally intercept[ed], endeavor[ed] to intercept, or procure[ed] any other person to intercept or endeavor to intercept, any wire, oral or electronic communication." Walden v. City of Providence, 495 F.Supp.2d 245, 261 (D.R.I.2007), quoting 18 U.S.C. § 2511(1)(a). However, there are two exceptions which, if applicable, serve to defeat Plaintiffs' claim. If you find that the communication at issue was "received through a telephone component used 'by an investigative or law enforcement officer in the ordinary course of his duties,' " then Plaintiffs' claim has no merit. Walden, 495 F.Supp.2d at 261, quoting 18 U.S.C. § 2510(5)(a)(ii); see also Amati v. City of Woodstock, 176 F.3d 952, 954 (7th Cir.1999). That is, if the recording of the telephone calls was routine and noninvestigative, the ordinary course of law enforcement exception applies. Walden, 495 F.Supp.2d at 263.

Under the second exception, the "consent exception," if you find that "one of the parties to the communication [gave] prior consent to [the] interception," Plaintiffs' claim fails. 18 U.S.C. § 2511(2)I. This consent can be implied. If you find that the Defendants demonstrated that the recordings fall within either of these exceptions, Plaintiffs' claims under Title III are defeated. Walden, 495 F.Supp.2d at 262.

**C. State Law Claims**

**(a) R.I. Gen. Laws § 11-35-21 Unauthorized interception, disclosure or use of wire, electronic, or oral communication**

To find in favor of the plaintiffs and against the Defendants, you must find that the Defendants intentionally intercepted the wire, electronic, or oral communication of Plaintiffs. The term "intercept" means to acquire aurally the contents of any wire or oral communications through the use of any intercepting device.

**(b) R.I. Gen. Laws § 9-1-28.1. Right to privacy—Action for deprivation of right**

"Under R.I. Gen. Laws § 9-1-28.1, in order to establish a violation of a right to privacy, plaintiffs must show that the defendants engaged in 'an invasion of something that is entitled to be private or would be expected to be private,' and the invasion must have been 'offensive or objectionable to a reasonable man.' This requires both a subjective and objectively reasonable expectation of privacy." Walden, 495 F.Supp.2d at 245, (D.R.I.2007), quoting from Pontbriand v. Sundlun, 699 A.2d 856 (R.I.1997).

**I R.I. Gen. Laws § 12-5.1-1**

The statute provides that "[a]ny person whose wire, electronic, or oral

communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses, or uses the communications." R.I. Gen. Laws § 12-5.1-13. Thus, where an interception is made in nonconformance with § 12-5.1-1 *et seq.* , a cause of action may lie. "The Rhode Island wiretap statute is in large part parallel to the federal wiretap statute," and therefore the same analysis applies. Walden, 495 F.Supp.2d at 270, citing Pulawski v. Blais, 506 A.2d 76, 77 (R.I.1986).

## DAMAGES-GENERAL

1. I will now instruct you on the law of damages. The mere fact that the Court charges you on the law of damages does not indicate in any respect that the Court feels that there should be a verdict in favor of the Plaintiff. You must remember that before even deciding the questions of damages, you must decide whether the plaintiff has sustained there burden of proof relative to all of the elements of the offenses that the defendant has been charged with; and you must further find that the defendant did not rely on any state statute in conducting there selves in the manner in which they did at the time of the incident in question. However, since I cannot tell you how you are going to decide this case, it is necessary for me to instruct you on how to arrive at the amount of verdict in the event that you find for the plaintiff.

2. Since damages are an element of the plaintiffs' case, they too must be proven by a fair preponderance of the evidence. You may not speculate in awarding damages. If you cannot decide what the amount of damage should be, then the plaintiff has failed to sustain her burden of proof on the question of damages, and I instruct you to return a verdict in favor of the defendant.

**DAMAGES-COMPENSATORY**

1. With respect to the Plaintiff for whom you have decided in favor of on the question of liability, you should consider awarding her actual compensatory damages. These damages are defined as the amount of dollar damages which will compensate the plaintiff for her loss or injury they sustained by reason of the defendant's acts. Examples of such damages are medical bills incurred, lost wages, and pain and suffering that the plaintiff may have suffered.

2. Although it is difficult to measure pain and suffering, you may not speculate as to the amount you are to award for pain and suffering if, in fact, you feel that any amount should be given. Your award must be based on the evidence and must be in an amount which is fair and adequate.

**DAMAGES- NOMINAL**

1. If you find that a particular Plaintiff is entitled to a verdict in accordance with my instructions, but do not find that the particular plaintiff has sustained any actual damages, then you may return a verdict for that particular plaintiff in some nominal sum such as $1.00.

**IX. Proposed Jury Verdict Sheet**

**42 U.S.C. § 1983**

1. Do you find that Defendant Manuel Viera violated the federal civil rights of any of the Plaintiffs?

________Yes ________No

2. Do you find that Defendant Mary Lennon violated the federal civil rights of any of the Plaintiffs?

________Yes ________No

3. Do you find that Urbano Prignano, Jr. violated the federal civil rights of any of the Plaintiffs?

________Yes ________No

4. Do you find that the City of Providence had a policy made by an official with final policy making authority of illegally recording all incoming and outgoing calls from the Providence Public Safety Complex?

________Yes ________No

If No, stop here; If yes, go to 5.

5. Do you find that that policy violated the constitutional rights of the Plaintiffs?

________Yes ________No

If No, stop here; If Yes, go to 6.

6. List which Plaintiff's civil rights were violated by Defendant Manuel Viera:

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

7. List which Plaintiff's civil rights were violated by Defendant Mary Lennon:

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

______________________________ _________________________

8. List which Plaintiff's civil rights were violated by Defendant Urbano Prignano, Jr.:

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

9. List which Plaintiff's civil rights were violated by Defendant City of Providence:

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

______________________________ _________________________

10. Do you find that the Plaintiffs listed in Numbers 6, 7, 8, & 9 suffered damages as a result of the violation of their civil rights?

________Yes ________No

If No, stop here. If Yes, go to 11.

11. What amount of damages do you award to each of the Plaintiffs listed in Number 6, 7, 8, & 9?

____________________________________________________________

**Fourth Amendment**

12. Did the Plaintiff's have a justifiable, reasonable or legitimate expectation of privacy in their telephone calls to or from the Public Safety Complex?

________Yes ________No

If No, stop here; If yes, got to 13.

13. Did the Defendant Manuel Viera violate that expectation of privacy?

________Yes ________No

14. Did the Defendant Mary Lennon violate that expectation of privacy?

________Yes ________No

15. Did the Defendant Urbano Prignano, Jr. violate that expectation of privacy?

________Yes ________No

16. Did the Defendant City of Providence violate that expectation of privacy?

________Yes ________No

If No, stop here: If yes, go to 17.

17. Which of the Plaintiff's 4th Amendment Rights were violated?

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

18. Which, if any, of the Plaintiffs suffered damages as a result of their 4th Amendment Rights being violated?

__________________________________ __________________________________

__________________________________ __________________________________

__________________________________ __________________________________

__________________________________ __________________________________

__________________________________ __________________________________

In No, stop here; If Yes, go to 19

19. Which Plaintiffs and in what amount do you award damages to?

| Name Plaintiff | What amount |
|---|---|
| __________________________________ | __________________________________ |
| __________________________________ | __________________________________ |
| __________________________________ | __________________________________ |
| __________________________________ | __________________________________ |
| __________________________________ | __________________________________ |

## **Title III**

20. Do you find that Defendant Manuel Viera intentionally intercepted any wire, oral, or electronic communication of any of the Plaintiffs?

________Yes ________No

21. Do you find that Defendant Mary Lennon intentionally intercepted any wire, oral, or electronic communication of any of the Plaintiffs?

________Yes ________No

22. Do you find that Defendant Urbano Prignano, Jr. intentionally intercepted any wire, oral, or electronic communication of any of the Plaintiffs?

________Yes ________No

23. Do you find that Defendant City of Providence intentionally intercepted any wire, oral, or electronic communication of any of the Plaintiffs?

________Yes ________No

If No, stop here; If Yes, go to 24

24. Do you find that the ordinary course of law enforcement exception applies?

________Yes ________No

25. Do you find that any Plaintiffs consented to have their oral communications intercepted?

________Yes ________No

If yes, please list the Plaintiffs who consented:

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

26. For each of the Plaintiffs listed in Number 25, list how many days the communications were intercepted for?

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

____________________________________ ______________________________

**<u>State Law Claims:</u>**

R.I. Gen. Laws § 11-35-21

27. Do you find by a fair preponderance of the evidence that Mary Lennon intentionally intercepted the oral communication(s) of any Plaintiffs?

Yes _____________ No __________________

If yes, please list each Plaintiff whose oral communication was intercepted.

28. Do you find by a fair preponderance of the evidence that Manuel Vieira intentionally intercepted the oral communication(s) of any Plaintiffs?

Yes _____________ No __________________

If yes, please list each Plaintiff whose oral communication was intercepted.

29. Do you find by a fair preponderance of the evidence that Urbano Prignano Jr. intentionally intercepted the oral communication(s) of any Plaintiffs?

Yes _____________ No __________________

If yes, please list each Plaintiff whose oral communication was intercepted.

30. Do you find by a fair preponderance of the evidence that the City of Providence intentionally intercepted the oral communication(s) of any Plaintiffs?

Yes _____________ No __________________

If yes, please list each Plaintiff whose oral communication was intercepted.

R.I. Gen. Laws § 9-1-28.1

31. Do you find by a fair preponderance of the evidence that Manuel Vieira engaged in an invasion of something that is entitled to be private or would be expected to be private?

Yes ____________ No _________________

32. Do you find by a fair preponderance of the evidence that Mary Lennon engaged in an invasion of something that is entitled to be private or would be expected to be private?

Yes ____________ No _________________

33. Do you find by a fair preponderance of the evidence that Urbano Prignano Jr. engaged in an invasion of something that is entitled to be private or would be expected to be private?

Yes ____________ No _________________

34. Do you find by a fair preponderance of the evidence that the City of Providence engaged in an invasion of something that is entitled to be private or would be expected to be private?

Yes ____________ No _________________

If yes to any, go on:

35. Do you find by a fair preponderance of the evidence that the invasion was offensive or objectionable to a reasonable person?

Yes ____________ No _________________

Municipal Defendants,
By their Attorneys:
Joseph M. Fernandez, City Solicitor

/s/ Kevin F. McHugh
Kevin F. McHugh (#3927)
Senior Assistant City Solicitor

/s/ Michael A. Calise
Michael A. Calise (#6715)
Assistant City Solicitor

City of Providence Department of Law
275 Westminster Street, Suite 200
Providence, Rhode Island 02903
(401) 421-7740 ext. 333
(401) 351-7596 (fax)
kevin_mc1950@hotmail.com
mcalise@providenceri.com

**Certificate of Service**

I hereby certify that on this 17th day of January, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. This document will be served by electronic mail upon:

Susan M. Carlin, Esq.
Stephen R. Famiglietti, Esq.
Famiglietti & Carlin, Ltd.
The Lincoln Center
132 Old River Road, Suite 205
Lincoln, RI 02865
Famcarltd@aol.com

Mark A. Fay, Esq.
Murphy & Fay, LLP
127 Dorrance Street, 2nd floor
Providence, RI 02903
mark@murphyandfay.com

Dean G. Robinson, Esq.
670 Willett Avenue
East Providence, RI 02915
drobinson@dgrlaw.necoxmail.com

George L. Santopietro, Esq.
Coia & Lepore, Ltd.
226 South Main Street
Providence, RI 02903
gsantopi@coialepore.com

Carolyn Mannis, Esq.
128 Dorrance Street, Suite 400
Providence, RI 02903
carolynmannis@hotmail.com

/s/ Kevin F.McHugh
Kevin F. McHugh